BADGER BEARING, INC., Plaintiff-Appellant and Cross-Respondent,†

E. Charles ROAMER, Plaintiff,

v.

DRIVES & BEARINGS, INC., Defendant,

Thomas WIEMERI and James Hanrahan, Defendants-Respondents and Cross-Appellants.

Court of Appeals

*No. 81–1240. Submitted on briefs October 4, 1982.— Decided February 16, 1983.*
(Also reported in 331 N.W.2d 847.)

† Petition to review denied.

For the plaintiff-appellant and cross-repondent the cause was submitted on the brief of *Thomas C. Ewing* of *Whyte & Hirschboeck, S.C.* of Milwaukee.

For the defendants-respondents and cross-appellants the cause was submitted on the brief of *Edmund C. Carns* of *Hughes, Mathewson & Carns Law Office* of Oshkosh.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J. Badger Bearing, Inc. brought an action for unfair competition against Thomas Wiemeri, James Hanrahan and Drives and Bearings, Inc. Wiemeri and

Hanrahan filed a counterclaim for defamation against Badger Bearing and its president, E. Charles Roamer. After the submission of evidence, the trial court dismissed Badger Bearing's suit and Hanrahan's counterclaim but allowed Wiemeri's counterclaim to go to the jury.

The jury found that Roamer had defamed Wiemeri and awarded $15,000 compensatory and $100,000 punitive damages. The trial court approved the jury's compensatory damages award but gave Wiemeri the option of accepting $10,000 in punitive damages or having a new trial limited to punitive damages. Wiemeri chose a new trial. Badger Bearing appeals from the compensatory damages verdict and from the trial court's order for a new trial on punitive damages.

The issues on appeal are whether the jury rendered a perverse or excessive verdict on compensatory damages, whether the verdict on punitive damages was excessive and whether the trial court erred by awarding a new trial limited to punitive damages or in refusing to grant a new trial in the interests of justice. Hanrahan cross-appeals from the dismissal of his counterclaim for defamation; Wiemeri and Hanrahan cross-appeal from the trial court's finding that Badger Bearing's suit was not frivolous within the meaning of sec. 814.025, Stats.

We conclude that the jury's verdict on compensatory damages was neither perverse nor excessive and that the trial court properly exercised its discretion in reducing the punitive damages and offering a new trial limited to punitive damages as an alternative to acceptance of a reduced amount. We conclude, also, that the trial court correctly denied Badger Bearing a new trial in the interests of justice. Further, we conclude that the trial court properly exercised its discretion in dismissing Hanrahan's defamation complaint. Finally, we conclude that the trial court made insufficient findings on the char-

acter of Badger Bearing's suit. Accordingly, we affirm in part, reverse in part and remand for further findings.

Badger Bearing is an industrial distributor of machinery parts that does business throughout most of Wisconsin. The company's main office is in Milwaukee; it also has service centers in Green Bay and Eau Claire. Wiemeri was a salesman for Badger Bearing from February 1971 through October 1978, when he resigned from the company to go into business with Hanrahan, a former employee of a Badger Bearing supplier.

The parties' dispute arose during the course of Wiemeri's and Hanrahan's efforts to set up Drives and Bearings, Inc., an Oshkosh-based distributor of machinery parts serving east-central Wisconsin. Badger Bearing brought suit against Wiemeri for breach of fiduciary duty and duty of loyalty, and against Wiemeri, Hanrahan and Drives and Bearings for unfair competition, trade disparagement and breach of contract. Wiemeri and Hanrahan counterclaimed for harassment, interference with third-party contracts and defamation.

At trial, Badger Bearing's evidence in support of its causes of action consisted of testimony from two witnesses: Roamer and Wiemeri. Roamer testified he belonged to an informal group of business owners, the "moral consortium," that sometimes helped new businesses get started. Roamer said that as early as 1976, Wiemeri had asked him about the moral consortium and had told Roamer that he wanted to go into business for himself. Wiemeri stated that in the course of his calls on Badger Bearing customers in east-central Wisconsin, he had asked whether they might be interested in purchasing machine parts from a distributorship that might be established in Oshkosh. Wiemeri denied that he had worked on developing his new business during hours when he was paid by Badger Bearing. Wiemeri also

denied diverting to Drives and Bearings any customer orders that he received as a Badger Bearing employee.

At the close of Badger Bearing's case, the trial court granted the defendants' motion for dismissal. The trial court noted that none of Badger Bearing's testimony went to its causes of action for unfair competition, trade disparagement or breach of contract and observed that "nothing has been said about Mr. Hanrahan who is a defendant. And very little, if any [thing], about Drives and Bearings, Inc., other than Mr. Wiemeri's participating in that." The court further found that Badger Bearing had introduced no proof sufficient for a jury to calculate any damages on the breach of loyalty claim.

Testimony during trial of the counterclaims indicated that once Roamer was informed about the incorporation of Drives and Bearings, he entered into the planning for the new operation. Roamer, Wiemeri and Hanrahan tentatively agreed that Roamer would receive nine and nine-tenths percent of the new company and that Badger Bearing would provide Drives and Bearings with products on the basis of cost plus ten percent. Badger Bearing's markup on sales to industrial customers was above twenty percent.

The agreement between Badger Bearing and the new distributorship was never implemented, and Roamer ceased to cooperate in the establishment of Drives and Bearings. There was conflicting testimony on the reason for the breakdown of the parties' arrangement. Roamer testified that he broke with Drives and Bearings because he learned that Wiemeri and Hanrahan had underhandedly stolen customers from Badger Bearing. He testified that he became angry when Drives and Bearings offered machinery parts to industrial customers at lower prices than Badger Bearing charged. As a member of the moral consortium, Roamer believed that cutting prices to win purchase orders was an unethical business

practice. Wiemeri testified that he became unwilling to buy products through Badger Bearing after Roamer refused to fill the very first order that Wiemeri had submitted to Badge Bearing until Wiemeri revealed the name of the customer for whom the machine parts were intended.

In the aftermath of the break between Roamer and Drives and Bearings, a Badger Bearing supplier, Horton Manufacturing Company, wrote to Roamer informing him that it was considering appointing Drives and Bearings as a Horton distributor and asking for Roamer's feelings on the matter. Roamer responded, in part, that "Mr. Wiemeri's illegal, immoral, and unprofessional conduct relative to his leaving our employ has left extremely bitter feelings in the eyes of *many* of our employees." (Emphasis in original.) Roger Langmack, temporary manager of Badger Bearing's Eau Claire store, received Roamer's permission to send his own letter to Horton. Langmack's letter stated, in part:

Both principals in this venture (Wiemeri and Hanrahan) have conducted themselves from the outset in a deceitful manner. While still in the *full time service* of their former employers, they stole paid time to lay the groundwork for their personal gains. Rather than coming forward as strong individuals with a sense of fair play and sharing their dreams with those who could have helped them, they chose to operate covertly until a customer innocently divulged their confidential scheme. Since then Mr. Wiemeri has publically lied to customers regarding a "buying arrangement" he has with Badger Bearing which has confused our customers and diverted our energies to countering this deceit. [Emphasis in original.]

Horton eventually decided not to grant a distributorship to Drives and Bearings.

Concerning the effect of Roamer's letter, Wiemeri testified that after the letter was sent, he experienced a

coldness both from suppliers and from prospective customers of his distributorship. Wiemeri said that he also felt considerable anxiety because he had pledged his home and all of his belongings as collateral for the business loan that he and Hanrahan received so that they could set up Drives and Bearings. If the company failed as a result of Roamer's attempt to discredit Wiemeri, the two owners of Drives and Bearings stood to lose everything they possessed.

At the close of testimony, the trial court dismissed all of the counterclaims except Wiemeri's suit for defamation. The jury awarded Wiemeri $15,000 compensatory and $100,000 punitive damages. On motions after verdict, the trial court found that Badger Bearing's suit against Wiemeri and Hanrahan was not a frivolous action within the meaning of sec. 814.025, Stats., and refused to award attorney's fees and costs to the defendants. The trial court approved the jury's compensatory damages award but found the punitive damages excessive. Accordingly, the trial court offered Wiemeri $10,000 in punitive damages or a new trial limited to the issue of punitive damages. Wiemeri opted for a new trial.

This panel certified the parties' appeal to the Wisconsin Supreme Court because the question of whether a trial court can order a new trial limited to one part of a damages verdict is a matter of first impression in this state. The appeal now comes before this court upon denial of certification by the supreme court.

The first issue on appeal is whether the jury rendered a perverse verdict on compensatory damages. Badger Bearing contends that the award reflected the jury's consideration of inflammatory, irrelevant evidence and was without evidentiary foundation. Badger Bearing argues that the trial court erred in allowing the jury to hear extensive testimony from Arthur DerDerian, who was a

nominal officer of Badger Bearing and a principal proponent of the moral consortium. Badger Bearing also asserts that the trial court put undue emphasis on Langmack's letter by allowing it to go to the jury room along with all of the other documents admitted into evidence during the course of the trial. We agree with the trial court's conclusion that the jury's award was not perverse.

■■■■

A verdict is perverse when it reflects highly emotional, inflammatory or immaterial considerations, or an obvious prejudgment with no attempt to be fair. *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 223, 291 N.W.2d 516, 522 (1980). The trial judge was in a better position than we are to determine whether perversity permeated the verdict, and we will uphold his conclusion that the verdict was not perverse unless he abused his discretion. *Id.* at 224, 291 N.W.2d at 522.

Badger Bearing argues that the trial court erred in permitting the jury to hear testimony from DerDerian because DerDerian was only nominally associated with Badger Bearing, and his statement to some suppliers that Wiemeri and Hanrahan were "liars and cheaters" could not be attributed to Badger Bearing. Badger Bearing also suggests that DerDerian's visionary account of the moral consortium was irrelevant to the issues being tried and may have caused jurors to punish Badger Bearing because they responded negatively to DerDerian's description of the consortium.

We conclude that the trial court correctly admitted DerDerian's testimony because it was relevant to whether Roamer had reasonable grounds to believe that Wiemeri had engaged in "illegal, immoral and unprofessional conduct." DerDerian occupied an office on Badger Bearing premises and was involved in discussions with Wiemeri and Hanrahan about the conditions under which the moral consortium and Badger Bearing would support

them in their attempt to establish an independent business. DerDerian's testimony was relevant, first, because he had information about what conduct on the part of Wiemeri and Hanrahan had precipitated the break with Roamer. Second, DerDerian's testimony was relevant because counsel for Badger Bearing had attempted to enhance Roamer's credibility by bringing out Roamer's membership in the moral consortium and by characterizing the consortium as "a group of businessmen all across the country of all walks of life that are attempting to promote free enterprise and honesty and fair dealing in business." DerDerian's testimony about the consortium assisted the jury in determining the specific values by which Roamer was measuring Wiemeri's actions and, thus, the reasonableness of Roamer's statement about Wiemeri.

As a second part of its contention that the jury verdict was perverse, Badger Bearing argues that Langmack's letter to Horton should not have been sent to the jury room along with other documents admitted into evidence during the course of the trial. We conclude that the trial court did not abuse its discretion in allowing the letter to go to the jury room.

The trial court refused to admit the Langmack letter into evidence on the cross-claimants' defamation claim because no language from that letter had been set forth in the pleadings as required under sec. 802.03(6), Stats.[1] In the exercise of its discretion, the trial court denied the cross-claimants' motion to amend their pleadings to include language from Langmack's letter because the court concluded that to permit amendment on the day of trial would prejudice Badger Bearing. The court did,

---

[1] Section 802.03(6), Stats., provides:

In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally.

however, allow the letter into evidence on the claim for interference with third-party contracts. Subsequently, only Wiemeri's defamation claim was submitted to the jury.

At the close of trial, Badger Bearing objected to sending Langmack's letter into the jury room on the grounds that it was irrelevant to the defamation claim. The cross-claimants argued that Badger Bearing's counsel had twice mentioned the Langmack letter in his closing remarks to the jury and that the letter was relevant in showing the purpose and intent behind Roamer's letter. The trial court decided to send all nineteen exhibits into the jury "and let them sort them out."

The trial judge has discretion to determine what exhibits will be permitted in the jury room. *Shoemaker v. Marc's Big Boy*, 51 Wis. 2d 611, 619, 187 N.W.2d 815, 819 (1971). Given Badger Bearing's mention of the Langmack letter in its closing argument and the jury's need to determine the motivation behind the moral consortium, we agree with the trial court that the letter was relevant to the jury's deliberations. Further, the trial court's decision to send the letter to the jury along with eighteen other exhibits did not place undue emphasis on it. We find no abuse of discretion.

An examination of the record refutes Badger Bearing's contention that the compensatory damages verdict had no evidentiary foundation. The record contains testimony from which the jury could have concluded that Wiemeri took a large financial risk and launched a new business in the belief that the well-established Roamer was supportive of the venture. The jury could have concluded that Roamer's strongly critical letter about Wiemeri undercut both Wiemeri's reputation and his sense of well-being. Wiemeri testified that the letter caused him considerable anxiety because he knew he

would lose everything if Drives and Bearings failed. He also testified that it made him less confident in his approach to suppliers and customers in the closely-knit machine parts industry.

The second issue on appeal is whether the compensatory damages awarded to Wiemeri are excessive. We agree with the trial court that the jury's award should stand.

In reviewing a damages award granted by a jury, this court may not substitute its judgment for that of the jury but, rather, must determine whether the award is within reasonable limits. *Cords v. Anderson,* 80 Wis. 2d 525, 552–53, 259 N.W.2d 672, 685 (1977). In our review of the record, we must view the evidence in the light most favorable to the damages award. *Id.* at 553, 259 N.W.2d at 685. Where the trial court approves the damages verdict and provides an analysis of the evidence supporting the verdict, the verdict will be set aside only where there is an evident abuse of discretion. *Ostreng v. Lowrey,* 37 Wis. 2d 556, 560–61, 155 N.W.2d 558, 559 (1968). In the instant case, since the trial judge approved the compensatory damages award without stating his reasons for doing so, we must examine the evidence *ab initio* to determine whether there is any credible evidence to support the jury's verdict. *Id.* at 561, 155 N.W. 2d at 560.

The special verdict form asked the jury to determine compensatory damages in two categories: (a) the amount that would compensate Wiemeri for loss of reputation and well-being, and (b) the amount that would compensate him for loss of income. The jury awarded $15,000 under (a) and nothing under (b). The trial court correctly instructed the jury that in determining damages under (a), it should take into consideration Wiemeri's character, social standing and influence, the

nature of Roamer's imputations and the extent to which they were publicized, the damage to Wiemeri's reputation and the mental suffering that Wiemeri experienced as a result of Roamer's statement. There was evidence from which the jury could have concluded that prior to publication of Roamer's letter, Wiemeri was known in the machine parts industry as a knowledgeable, trustworthy, likeable man and that because Wiemeri was a salesman, the warm welcome that he received from potential customers was essential to his professional success and personal sense of well-being. The jury could also have concluded that Roamer's statement damaged Wiemeri's reputation not only with a major supplier but also, at the very least, with three former co-workers who also received Roamer's letter. The jury was entitled to conclude that Wiemeri suffered considerable humiliation and anxiety as a consequence of the letter.

Unlike this court, the jury had the opportunity to observe Wiemeri and the other witnesses on the stand. Direct observation was especially important in assessing something as elusive as the degree of anguish that Wiemeri felt in the aftermath of Roamer's letter. With that in mind and viewing the record in the light most favorable to the verdict, we conclude that the $15,000 awarded by the jury comes within reasonable limits.

The third issue on appeal is whether the trial court erred in finding the jury's punitive damages award excessive and cutting the amount to $10,000. We conclude that the trial court acted properly in reducing the jury's award.

Under sec. 805.15 (6), Stats., if a trial court finds that a verdict is excessive, it must determine the amount which is reasonable as a matter of law. Because the trial court stated its reasons for finding the jury's award of punitive damages excessive and for reducing the award,

we will reverse the trial court's determination only if we conclude there has been an abuse of discretion. The test to determine abuse of discretion is whether, if the trial court had been sitting as the sole finder of fact and had fixed the damages in the disputed amount, this court would still disturb the finding. *Lutz v. Shelby Mutual Insurance Co.*, 70 Wis. 2d 743, 759, 235 N.W.2d 426, 435 (1975). If there is a reasonable basis for the trial court's determination as to the proper amount, it will be sustained. *Id.*

The trial court stated that in reducing the punitive damages, it took into consideration the limited purpose of Roamer's letter, the limited actual damages, the scant future repercussions from the letter and Badger Bearing's ability to pay. The court also noted that had the charge of defamation been brought under the criminal code, the maximum fine would have been $10,000. The trial court's analysis is supported by the record and establishes a reasonable basis for fixing punitive damages at $10,000. We find no abuse of discretion.

The fourth issue on appeal is whether the trial court erred in offering Wiemeri a new trial limited to punitive damages as an alternative to accepting $10,000. Badger Bearing contends that under the plain meaning of sec. 805.15(6), Stats., whenever a trial court finds the jury's answer to one damages question excessive, its discretion is limited to offering the injured party a reduced amount or, as an alternative, a new trial on *all* damages questions. We decline to accept Badger Bearing's construction of sec. 805.15(6) and affirm.

Under sec. 805.15(6), Stats., whenever a trial court determines that "a verdict" is excessive or inadequate, the court is to determine a reasonable amount and order "a new trial on the issue of damages" unless within ten days the injured party elects to accept judgment in the changed amount. The "issue" of damages could be read

as including all of the damages questions listed on a special verdict form or as denoting only the specific question in response to which the jury has awarded an improper amount. Because reasonably well-informed people might construe the provision differently, it is ambiguous. *Kollasch v. Adamany,* 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981).

Section 805.15 (6), Stats., became effective on January 1, 1976 by order of the Wisconsin Supreme Court. We look to the principles expressed in recent supreme court opinions as construction aids. First, in general, the scope of a new trial is discretionary with the trial court. *Pieper v. Neuendorf Transportation Co.,* 87 Wis. 2d 284, 293, 274 N.W.2d 674, 678 (1979). The trial court is in the best position to determine which issues should be retried, and the question on appeal is whether the trial court abused its discretion. *Id.* Where the court is ordering a new trial on some issues and it appears that error may have affected other issues, the trial court may order that a full retrial should be had. *Id.* The court may grant a partial new trial when the error is confined to one issue which is "entirely separable" from the others, *Kenwood Equipment, Inc. v. Aetna Insurance Co.,* 48 Wis. 2d 472, 485–86, 180 N.W.2d 750, 758 (1970); however, although an error affects one issue only, a new trial on all issues should be granted where this will best subserve the ends of justice. *Id.* at 486, 180 N.W.2d at 758.

We must determine whether compensatory damages are "entirely separable" from punitive damages and whether, if the two kinds of damages are separable, the ends of justice will be best served by requiring the trial court in every instance to order a new trial on all damages questions as an alternative to a changed amount on some. We conclude that compensatory and punitive damages are separable and that justice would not be served

by mandating a new trial on all damages questions as the invariable alternative to acceptance of a changed amount of punitive damages.

Compensatory damages are tied to punitive damages in that a finding of actual damages may be a precondition to a punitive damages award. *See Wussow v. Commercial Mechanisms, Inc.*, 97 Wis. 2d 136, 150–51, 293 N.W.2d 897, 904–05 (1980). Further, although there is no mathematical formula for calculating punitive damages on the basis of compensatory damages, the amount of compensatory damages may be relevant to the assessment of punitive damages. *Fahrenberg,* 96 Wis. 2d at 233, 291 N.W.2d at 526.

Except that a jury deciding punitive damages will need to know what compensatory damages have been found, however, the two kinds of damages are entirely separable. Although compensatory and punitive damages are subsumed under the general category of the branch of remedies denominated as damages, *Wussow,* at 149, 293 N.W.2d at 904, each is a distinct remedy such that settlement of one kind of damages does not affect the continued existence of the cause of action based on operative facts which could give rise to multiple or alternative damage remedies. *Id.* at 149–50, 293 N.W.2d at 904. The theory underlying punitive damages differs from that underlying compensatory damages. Punitive damages are not awarded to compensate a party for an actual loss sustained but to punish the wrongdoer and to deter him or her and others from future similar wrongdoing. *Fahrenberg,* at 234, 291 N.W.2d at 526–27. Factors to be considered in determining the proper amount to be awarded as punitive damages include: the grievousness of the defendant's acts; the degree of malicious intention; the potential damages that might have been done by such

acts as well as the actual damages, and the defendant's ability to pay. *Id.* at 234, 291 N.W.2d at 527.

Under *Wussow,* a trial may be held on the single issue of punitive damages. Prior to reaching a verdict on punitive damages, the jury must be informed about the extent of the defendant's liability for actual damages. It makes no difference in the trial on punitive damages, however, whether the amount of the defendant's liability was fixed by settlement or by a previous jury verdict.

Having determined that compensatory and punitive damages are separable, we can discover no reason to conclude that the interests of justice will be invariably best served by setting a new trial on all damages issues as the plaintiff's only alternative to acceptance of an amount fixed as punitive damages by the trial court. We reiterate that the trial court is in the best position to identify errors on the part of the jury and to determine the necessary scope of a new trial. Accordingly, we hold that under sec. 805.15(6), Stats., a trial court does have discretion to order a retrial on punitive damages alone.

Our review of the record has convinced us that in the instant case, the trial court correctly upheld the compensatory damages award and reduced punitive damages. The trial court's order for a new trial limited to punitive damages was not an abuse of discretion.

The fifth issue on appeal is whether the trial court erred in refusing to grant Badger Bearing a new trial in the interests of justice. We affirm.

Badger Bearing contends that it was prejudiced by the cumulative effect of the trial court's rulings permitting DerDerian to testify, allowing Langmack's letter to go to the jury room and excluding a part of the testimony that would have been given by Horton Manufacturing's president, Hugh Schilling. Schilling would have testified that Roamer's letter about Wiemeri did not influence the de-

cision not to appoint Drives and Bearings as a Horton supplier. Schilling would also have stated that in the machine parts industry, the statement that a man's conduct was "illegal, immoral and unprofessional" would not be understood as a defamatory remark.

This court will grant a new trial in the interests of justice only in the event of a probable miscarriage of justice and only with reluctance and great caution. *Roe v. State*, 95 Wis. 2d 226, 242, 290 N.W.2d 291, 300 (1980). The test is not whether it is possible that a different result might occur if a new trial were held, rather it must appear with a substantial degree of probability that a different result would be produced. *Id.* at 242–43, 290 N.W.2d at 300.

Since we concluded earlier that the trial court properly admitted DerDerian's testimony and allowed Langmack's letter to go to the jury room, the whole of Badger Bearing's request for a new trial rests on the trial court's exclusion of Schilling's testimony about the immediate effect of Roamer's letter and Schilling's opinion that Roamer's description of Wiemeri was not defamatory. Whether or not the trial court erred in excluding Schilling's comments, those comments very probably would not have affected the outcome of the trial.

The sixth issue on appeal is whether the trial court erred in denying Hanrahan's motion for leave to amend the pleadings by adding language from Langmack's letter of January 23, 1979 to the defamation complaint. We affirm.

Section 802.09 (2), Stats., provides in part:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action

will be subserved thereby *and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits.* [Emphasis added.]

On appeal, this court will not overturn a trial court's denial of a motion to amend the pleadings unless we find that the denial was an abuse of discretion. *Wiegel v. Sentry Indemnity Co.,* 94 Wis. 2d 172, 185, 287 N.W.2d 796, 803 (1980).

Badger Bearing objected to admission of the Langmack letter on the grounds that it was outside the scope of the defamation pleadings. The trial court then denied Hanrahan's motion to amend because it found that Badger Bearing would be prejudiced were Hanrahan allowed to add language from the Langmack letter to the complaint on the day of trial. The trial court accepted Badger Bearing's assertion that it could not properly defend Langmack's letter on such short notice because the necessary witnesses were not readily available. We find no abuse of discretion.

The seventh issue before us is whether the trial court erred in dismissing Hanrahan's defamation complaint. We affirm.

Section 802.03(6), Stats., states:

In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their publication and their application to the plaintiff may be stated generally.

The Wisconsin Supreme Court has asserted that a complaint does not state a cause of action for libel unless it includes the specific words upon which the plaintiff bases his claim. *Olston v. Hallock,* 55 Wis. 2d 687, 700, 201 N.W.2d 35, 41 (1972).

The cross-claimants' original complaint quoted only the phrase "illegal, immoral and unprofessional." That phrase, taken from Roamer's letter of January 22, 1979, referred to Wiemeri alone. Having denied Hanrahan's request to amend, the trial court correctly found that the complaint did not state a cause of action as to Hanrahan.

The eighth issue before us is whether the trial court erred by refusing Hanrahan's request that his defamation claim be dismissed without prejudice. We affirm.

Under sec. 805.14(7), Stats., where the trial court grants a motion to dismiss on grounds of insufficient evidence, "[u]nless the court in its order for dismissal otherwise specifies for good cause recited in the order," the dismissal operates as an adjudication upon the merits. We will not overturn the trial court unless there has been an abuse of discretion.

On motions after verdict, the trial court found no good cause to dismiss Hanrahan's claim without prejudice. The trial judge stated that Hanrahan "was here to present his claim and the evidence just didn't warrant it." The court then explicitly dismissed with prejudice. We find no abuse of discretion.

The final issue on appeal is whether the trial court erred in finding that Badger Bearing's suit against Wiemeri and Hanrahan was not frivolous within the meaning of sec. 814.025, Stats., and that, therefore, neither defendant was entitled to costs and attorney fees. We reverse and remand to the trial court for further findings.

Under sec. 814.025(1), Stats., if an action is found to be "frivolous" by the court, "the court shall award to the successful party costs . . . and reasonable attorney fees." Under sec. 814.025(3), in order to find an action

"frivolous," the court must find one or more of the following:

(a) The action . . . was commenced, used or continued in bad faith, solely for purposes of harassing or maliciously injuring another.

(b) The party or the party's attorney knew, or should have known, that the action . . . was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

Section 814.025, Stats., does not allow the trial court to conclude frivolousness or lack of it without findings stating which statutory criteria were present. *Sommer v. Carr*, 99 Wis. 2d 789, 792, 299 N.W.2d 856, 857 (1981). If there is not enough in the record for the trial judge to make such findings leading to a conclusion of frivolousness or its absence, then the trial court must conduct a hearing for the purpose of reaching such findings and resulting conclusions. *Id.* at 793, 299 N.W.2d at 858. The issue of whether the action had a reasonable basis in law or equity is a mixed question of fact and law. *In re Estate of Bilsie*, 100 Wis. 2d 342, 354, 302 N.W.2d 508, 516 (Ct. App. 1981). When analyzing that issue, the court must ascertain the evidentiary facts available before trial to support the claim of the party moved against under sec. 814.025 and determine the quantum of proof required by law to prevail on the claim. *Id.*

In the instant case, the trial court made insufficient findings to support its conclusion that Badger Bearing's suit against Wiemeri and Hanrahan was not frivolous. As to the suit against Wiemeri, the court simply remarked, "I think there was a technical cause of action against him . . . ." As to the suit against Hanrahan, the court stated only that the cause of action against him

was "somewhat frivolous" but that the court would not find against Badger Bearing because Hanrahan's counterclaim was not "much more substantial than [Badger Bearing's] cause of action." We remand to the trial court for a hearing that will enable the trial court to draw conclusions about the nature of Badger Bearing's suit based on specific findings concerning the presence or absence of the criteria enumerated by sec. 814.025 (3) (a) and (b), Stats.

In summary, we hold that the jury's award of $15,000 to Wiemeri as compensatory damages was neither perverse nor excessive, that the trial court properly exercised its discretion in finding the punitive damages award excessive, in offering Wiemeri $10,000 or a new trial limited to punitive damages and in refusing Badger Bearing a new trial in the interests of justice. We further hold that the trial court properly exercised its discretion in refusing Hanrahan's request to amend his defamation complaint and in dismissing the complaint with prejudice. Finally, we remand to the trial court for further findings on whether Badger Bearing's suit against either Wiemeri or Hanrahan was frivolous.

*By the Court.*—Judgment affirmed in part; reversed in part and remanded.