Jeffrey Schwigel and Classic Tool & Machine Co.,
Plaintiffs-Respondents,

v.

David J. Kohlmann, Jane Kohlmann and Kohl-
mann Tool & Design, Inc., Defendants-
Appellants.†

Court of Appeals

*01–1918. Submitted on briefs February 21, 2002.—Decided
April 17, 2002.*

2002 WI App 121

(Also reported in 647 N.W.2d 362.)

† Petition to review denied 9-26-02.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Paul A. Piaskoski, SBN* and *Benjamin J. Harris, SBN* of *Piaskoski & Associates, S.C.* of Bayside.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Daniel W. Stevens* of *Stevens & Kroening LLC* of Menomonee Falls.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. NETTESHEIM, P.J.    David J. Kohlmann, his wife Jane, and their corporation, Kohlmann Tool & Design, Inc. (Kohlmann), appeal from a judgment confirming a jury verdict awarding Jeffrey Schwigel and his corporation, Classic Tool & Machine, Co. (Schwigel), a total of $562,000 in compensatory and punitive damages. Kohlmann argues that the form of the verdict was improper because it asked a single damage question relating to Schwigel's multiple claims based on breach of contract, negligent misrepresentation, and unjust enrichment. Kohlmann makes no challenge to that portion of the judgment confirming the jury's further award of $12,000 compensatory damages on Schwigel's conversion claim.

¶ 2.    We agree with Kohlmann that the verdict improperly asked a single damage question on Schwigel's breach of contract, negligent misrepresentation and unjust enrichment claims. We reverse this portion of the judgment and remand for a new trial on Schwigel's compensatory claims relating to these three causes of action and on his punitive damage claim. We

affirm that portion of the judgment relating to Schwigel's conversion claim. We also affirm the liability portions of the judgment as to Jane Kohlmann. As to Kohlmann's remaining issues, we either summarily affirm the judgment or deem the issues moot in light of our order for a new damage trial.

## *FACTS AND PROCEDURAL HISTORY*

¶ 3. Our recitation of the facts is presented in a light most favorable to Schwigel since the jury has found Kohlmann liable on all of the claims at issue, and we do not disturb those findings on appeal. Kohlmann and Schwigel were both tool and die makers. In 1998, Kohlmann was operating his business out of a shop he owned in Cedarburg, Wisconsin. After Kohlmann and Schwigel became acquainted, Kohlmann asked Schwigel to move his business to Kohlmann's shop. Schwigel declined. During October 1999, Kohlmann told Schwigel that he had located a prospective and lucrative motor shaft production job. Since Schwigel had the expertise and machinery to handle the job, Kohlmann again asked Schwigel to relocate to his shop and to take over the prospective job. Schwigel again declined, but the parties continued to talk. In the meantime, Schwigel investigated the prospective job and determined that it provided an opportunity to make a good profit.

¶ 4. The talks eventually produced a verbal agreement whereby Schwigel would share production space in Kohlmann's shop at the cost of $700 per month. The motor shaft production job was a substantial factor in Schwigel's decision to relocate. Schwigel moved into Kohlmann's shop on or about November 3, 1999. Because of limited space, Schwigel stored some of his equipment in another building owned by Jack Dunfee, a business associate of Kohlmann. Dunfee did not

charge Kohlmann for storing Schwigel's equipment, and Kohlmann had the only key to the storage area.

¶ 5.   On November 19, 1999, Kohlmann received a purchase order from the manufacturer for the immediate production of the shafts. After receiving the purchase order, Schwigel and Kohlmann went to Illinois to look into purchasing a machine to mass produce the shaft job. On December 2, 1999, Schwigel received approval from his bank to purchase the mass-production machine. That same day, Kohlmann offered to buy the machine for Schwigel and allow Schwigel to make payments to him. However, two days later, Kohlmann told Schwigel that he was going to buy the machine for himself in order to produce the shafts and keep the shaft job for himself.

¶ 6.   Thereafter, the relationship between Schwigel and Kohlmann deteriorated, and on December 28, 1999, Kohlmann told Schwigel to get out. Without notice to Schwigel, Kohlmann changed the locks on the shop, prohibiting Schwigel from gaining access to his equipment and performing work for his customers. After numerous attempts to get access to the shop, Schwigel contacted the Cedarburg police to help him get his equipment back. On January 18 and 19, 2000, the police supervised as Schwigel moved his equipment out of Kohlmann's shop. At that time, Schwigel also asked to remove his other equipment that had been stored in the building owned by Dunfee. Neither Dunfee nor Kohlmann would allow Schwigel access to the storage building, and the police told Schwigel that if he attempted to access the building he would be charged with trespassing.

¶ 7.   By July 2000, Schwigel had lost all of his customers and he was out of business. Four months later, in November 2000, Schwigel received a phone call

from Dunfee who told him to come and get his equipment from the storage building. When Schwigel went to remove his equipment from the storage building, he found that certain items were missing.

¶ 8.   This lawsuit ensued. By amended complaint, Schwigel alleged claims of breach of contract, negligent misrepresentation, unjust enrichment, promissory estoppel and conversion against Kohlmann. Schwigel sought compensatory and punitive damages. The jury trial lasted four days. When discussing the form of the verdict at the close of the evidence, the trial court proposed separate damage questions for each of Schwigel's claims. Kohlmann supported this approach. Schwigel objected and instead asked for a single question as to the breach of contract, negligent misrepresentation, unjust enrichment and promissory estoppel claims. After much discussion, Schwigel persuaded the court to change its mind. As a result, the special verdict asked a single compensatory damage question as to Schwigel's breach of contract, negligent misrepresentation, unjust enrichment and promissory estoppel claims.[1] However, the verdict did ask a separate damage question as to Schwigel's conversion claim.

¶ 9.   The jury found in favor of Schwigel on all his claims, save promissory estoppel.[2] In answer to the single question addressing Schwigel's breach of contract, negligent misrepresentation and unjust enrichment claims, the jury awarded Schwigel a lump sum of $250,000. In answer to the separate damage question

---

[1] The damage question asked, "What sum of money will compensate the plaintiffs for any losses caused by the defendant?"

[2] As to the negligent misrepresentation claim, the jury found that Kohlmann was eighty percent negligent and Schwigel was twenty percent contributorily negligent.

on Schwigel's conversion claim, the jury awarded $12,000. In addition, the jury awarded Schwigel punitive damages in the amount of $300,000. Post verdict, the trial court upheld the verdict. Kohlmann appeals.

## *SPECIAL VERDICT DAMAGE QUESTION*

¶ 10.  We accord substantial deference to the manner in which a trial court frames a special verdict. *Runjo v. St. Paul Fire & Marine Ins., Co.*, 197 Wis. 2d 594, 602, 541 N.W.2d 173 (Ct. App. 1995). However, we must reverse when a special verdict question does not fairly represent the material issue of fact to the jury. *See id*. In performing our review, we do not view the special verdict in a vacuum. Instead, we also look to the accompanying instructions given to the jury. "This court has frequently stated that the form of the special verdict rests in the discretion of the trial court, and the court's chosen form will not be rejected unless the inquiry, *taken with the applicable instruction,* does not fairly present the material issues of fact to the jury for determination." *Topp v. Cont'l Ins. Co.*, 83 Wis. 2d 780, 785, 266 N.W.2d 397 (1978) (emphasis added). A practice treatise also captures this thought:

> A special verdict must also be formulated to complement the court's instructions to the jury. In framing the verdict, the court must ensure that the verdict, when taken in conjunction with the applicable instructions, fairly presents all material issues of fact to the jury for determination. The instructions and special verdict are adequate as long as together they cover the law applicable to the facts of the case.

R. George Burnett et al., *Wisconsin Trial Practice* § 12.10, at 9 (1999) (citations omitted).

¶ 11. The problem with the special verdict in this case lies not only in the form of the verdict, but also in the accompanying instructions. Breach of contract, negligent misrepresentation and unjust enrichment are discrete causes of action with different elements. More importantly, the law states the measure of damages for these claims differently. For a breach of contract, the measure of damages is the "amount that will reasonably compensate the injured person for all losses that are the natural and probable results of the breach." WIS JI— CIVIL 3710. For negligent misrepresentation, the measure of damages is the "sum of money [that] will fairly and reasonably compensate [the plaintiff] for (his)(her) out-of-pocket loss." WIS JI—CIVIL 2403 (suggested special verdict question 7). For unjust enrichment, the measure of damages is the "reasonable value" of the benefit conferred. WIS JI—CIVIL 3028.

¶ 12. In this case, the trial court instructed the jury under the measure of damages for breach of contract, and then additionally told the jury, "The same measure of damages applies to the other claims made by the plaintiff." While it may be debatable whether the measure of damages for a breach of contract (reasonable compensation for the losses caused by the breach) and for negligent misrepresentation (out-of-pocket loss) is the same, this certainly cannot be said as to the measure of damages for unjust enrichment (reasonable value of the benefit conferred). Thus, at a minimum, the special verdict and the accompanying instructions misstated the law of damages as to unjust enrichment. And that misstatement presented the prospect of duplicative damage awards or a windfall to Schwigel.

¶ 13. Schwigel argues this error is of no consequence because "[t]he special verdict did not ask the jury to put a dollar amount on the benefits unjustly conferred upon the Kohlmann's."[3] This argument is a nonstarter. The special verdict expressly told the jury to address compensatory damages if the jury had found for Schwigel on "any one or more" of his various claims. The jury found for Schwigel on three of his claims, including unjust enrichment. In light of that finding, any reasonable jury would see the need to consider damages on the unjust enrichment claim, as well as on the accompanying claims. We presume a jury follows the trial court's instructions. *State v. Deer*, 125 Wis. 2d 357, 364, 372 N.W.2d 176 (Ct. App. 1985).

¶ 14. In an effort to salvage the verdict, we have examined whether the jury instructions cautioned the jury to not duplicate or overlap the damages awarded in the single question based on the three separate claims. The trial court came close on this question, but not close enough. The court instructed the jury:

> You may be required to answer a number of questions on damages that relate to the various claims. In answering, make sure that the amount of money you fill in for damages, if any, is not influenced or affected by your answers to previous questions in the verdict.[4]

If this instruction had cautioned the jury to make sure that it was not awarding duplicate damages on the

---

[3] Schwigel then undertakes to explain how the evidence supports the $250,000 award under his breach of contract or negligence claims.

[4] This instruction was the functional equivalent of Wis JI—Civil 1700 cautioning that "[i]n answering the damage

multiple claims when considering the single damage question, perhaps we could salvage the verdict. But the instruction refers to other damage questions *on the verdict,* not to the risk that the jury might award duplicate damages to the single question pertaining to the three claims at issue. Thus, this instruction only assured that the conversion damage award of $12,000 was not duplicated in the lump sum award of $250,000 on the three other merged claims. It did not assure that the lump sum award did not include duplicative damages on the three claims the jury was considering in the single damage question.

¶ 15.   Schwigel also argues that a special verdict with separate damage questions would have posed the same prospect of duplicate damages.[5] But, as with the preceding issue, that risk could also have been addressed by a properly worded jury instruction cautioning the jury to not duplicate damages on the three claims. Moreover, if it appeared that the jury had ignored such an instruction and awarded duplicate damages when answering the separate damage questions, the court could invoke the excessive verdict procedures set out in WIS. STAT. § 805.15(6) (1999–2000)[6] and reduce the damages to the levels permitted by the evidence. That option is not available

question(s), be careful not to include or duplicate in any answer amounts included in any other answer made by you or [by the court]."

[5] From our reading of the record, it appears that this argument is what prompted the trial court to change its mind and to restructure the verdict with a single damage question as requested by Schwigel.

[6] All statutory references are to the 1999–2000 version.

in this case where the jury was not asked to allocate damages amongst the various claims.[7]

¶ 16. In summary, we reverse those portions of the judgment awarding $250,000 for compensatory damages on the breach of contract, negligent misrepresentation and unjust enrichment claims. We remand for a new trial on those claims. We affirm the portion of the judgment awarding $12,000 compensatory damages on Schwigel's conversion claim.

## PUNITIVE DAMAGES

¶ 17. Having overturned the jury's $250,000 compensatory damage award, we also conclude that the jury's $300,000 punitive damage award cannot stand. One of the factors that a jury may take into consideration when awarding punitive damages is the "actual damage" incurred by the victim. WIS JI—CIVIL 1707.1. Again, we presume that the jury follows the trial court's instructions. *Deer*, 125 Wis. 2d at 364. So it is fair to conclude that the jury's punitive damage award was premised, at least in part, on the substantial compensatory damage award of $250,000. Having struck down that award, it follows that the jury's punitive damage award cannot stand.

¶ 18. In an attempt to salvage the punitive damage award, Schwigel points to the trial court's postverdict ruling that the punitive damage award was sup-

---

[7] The election of remedies doctrine can also assist in avoiding double recovery. *See Tuchalski v. Moczynski*, 152 Wis. 2d 517, 520, 449 N.W.2d 292 (Ct. App. 1989). The parties do not address this doctrine and we make no judgment whether this is an appropriate case for application of the doctrine. The parties or the trial court may take this question up on remand if they see fit.

ported by the jury's $12,000 damage award on the conversion claim. However, there is a fundamental defect in this argument. The jury did not award $300,000 in punitive damages based on a $12,000 compensatory damage award. *Instead, the jury award awarded $300,000 in punitive damages based upon a $262,000 compensatory damage award.* Schwigel's argument and the trial court's ruling overlook the premise upon which the jury made its punitive damage award.[8]

¶ 19. If the issue before us were limited to the trial court's approval of a punitive damage award premised *solely* upon the jury's compensatory damage award of $12,000, we perhaps could uphold the trial court's ruling. But those are not the facts. Per the jury instructions, the jury's punitive damage award was premised, at least in part, upon Schwigel's "actual damage," which the jury determined to be $262,000. To surmise that the jury would have made the same punitive damage award based upon a $12,000 compensatory damage award is rank speculation. We decline to perpetuate that speculation.

¶ 20. We reverse the punitive damage award and remand for a new trial on that claim as well. We stress that we are not disturbing the jury's determination that Kohlmann acted maliciously or in intentional disregard of Schwigel's rights. The evidence abundantly supports that determination and that question shall not be submitted to the new jury. The trial on remand is limited only to the question of damages. However, this does not mean that evidence of Kohlmann's offending conduct is not relevant on the question of the *amount* of punitive damages in the further trial. Since the purpose

---

[8] The dissent is similarly flawed.

of punitive damages is to punish, *see* WIS JI—CIVIL 1707, it follows that the jury determining punitive damages must be apprised of the offending conduct.

## *MISCELLANEOUS ISSUES*

### 1. Issues as to Jane Kohlmann

¶ 21.   Jane Kohlmann argues that the verdict was defective because it did not discriminate between her conduct and that of David, her husband. Instead, the verdict consistently referred to "the defendants." However, Jane has waived this issue. She did not propose her own special verdict and she never asked that the special verdict make this distinction. Moreover, this is not a matter of waiver by stealth or silence. To the contrary, during the jury instruction conference, Schwigel expressly proposed that the verdict consistently refer to the defendants in the plural. Jane offered no objection and the trial court adopted Schwigel's proposal.

¶ 22.   Based on the same reasoning, we need not address Jane's further arguments that David's conduct was improperly imputed to her and that the evidence was insufficient as to all of Schwigel's claims. To preserve this argument, Jane was duty bound to assure that the verdict made separate inquiries as to her. She did not. Instead, in an apparent strategic decision, she joined in with David's theory of defense, and the two presented a united force against Schwigel's claims.

## 2. Sufficiency of Evidence as to Negligent Misrepresentation

¶ 23.   Kohlmann argues that the trial court erred by denying his motion to dismiss Schwigel's negligent misrepresentation claim at the close of the evidence. We summarily reject this argument. "A motion challenging the sufficiency of the evidence as a matter of law should not be granted 'unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party.' " *Beacon Bowl, Inc. v. Wis. Elec. Power Co.*, 176 Wis. 2d 740, 788, 501 N.W.2d 788 (1993) (citation omitted); *see also* WIS. STAT. § 805.14(1).

¶ 24.   As we have noted, Kohlmann does not challenge the jury's liability findings as to the breach of contract and unjust enrichment claims. We have previously set out the facts supporting those claims. Those facts, viewed in a light most favorable to Schwigel, also abundantly supported Schwigel's negligent misrepresentation claim. The trial court properly denied Kohlmann's motion to dismiss at the close of the evidence.

## 3. Moot Issues

¶ 25.   Kohlmann claims that the punitive damage award cannot stand in light of the $12,000 compensatory damage award on Schwigel's conversion claim. However, we have already reversed the punitive damage award on other grounds. This issue is moot. Kohlmann also argues that a document pertaining to damages, and not produced during discovery, was

improperly admitted into evidence in an altered condition. However, any surprise or prejudice attached to this evidence is rendered moot by our grant of a new trial. This is also true as to Kohlmann's argument that a written "wish list" of Schwigel's damages, not admitted into evidence, improperly found its way into the jury room.[9]

### *CONCLUSION*

¶ 26. We reverse and remand for a new damage trial on Schwigel's claims for breach of contract, negligent misrepresentation and unjust enrichment. We also remand for a new trial on Schwigel's claim for punitive damages. In all other respects we affirm the judgment.

¶ 27. Costs are not awarded to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.

¶ 28. ANDERSON, J. *(concurring in part; dissenting in part).* I differ with the majority's conclusion that the trial court engaged in "rank speculation," Majority at ¶ 19, when it determined that the jury's award of punitive damages was supported by the compensatory damages awarded for conversion. As I understand the majority's position, the punitive damages award must be reversed because it may be based, in part, on the jury being instructed that it may take into consideration the "actual damage" incurred by Schwigel.[1] The reversal of the punitive damages award and

---

[9] Kohlmann does not offer any argument as to how the "wish list" tainted the jury's damage award on Schwigel's conversion claim. As noted, we do not read Kohlmann's appeal to challenge the conversion award.

[1] The jury was instructed that in considering whether to award punitive damages it may take into account the actual

remand for a new trial on punitive damages is unnecessary and overburdens scarce judicial resources.[2]

¶ 29.   Trial courts in Wisconsin have significant authority to decide whether a jury verdict of punitive damages is proper in a particular case. *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 229, 291 N.W.2d 516 (1980). The trial court may either approve the amount awarded or reduce what the court believes are excessive punitive damages to a reasonable amount. *Id.* at 232 n.12. This authority is necessary because it is within the jury's discretion to determine the proper amount of punitive damages to award, *Reyes v. Greatway Insurance Company*, 220 Wis. 2d 285, 302, 582 N.W.2d 480 (Ct. App. 1998), *aff'd,* 227 Wis. 2d 357, 597 N.W.2d 687 (1999), and because punitive damages rest upon a "vague and immeasurable basis." *Malco, Inc. v. Midwest Aluminum Sales, Inc.*, 14 Wis. 2d 57, 64, 109 N.W.2d 516 (1961). In

---

damages. Wis JI—Civil 1707.1. I do not place the same importance on this instruction as does the majority. While the law requires that there be a reasonable relationship between the actual damages and the punitive damages award, it does not require an arithmetic relationship. *Tucker v. Marcus*, 142 Wis. 2d 425, 447, 418 N.W.2d 818 (1988). Rather, the actual damages are only one of many factors relevant to the proper amount of punitive damages. *Id.* Also, the jury is not required to consider the ratio between compensatory and punitive damages; it is told that it may consider "the potential damage which may have been done by such acts as well as the actual damage."

[2] There is no procedural requirement that mandates a new trial on all damages awarded when a new trial is ordered only on compensatory damages. Punitive damages and compensatory damages are "entirely separable" and the interests of justice are best served by limiting a new trial on damages to those that are suspect because of error. *See Badger Bearing, Inc. v. Drives & Bearings, Inc.*, 111 Wis. 2d 659, 673–74, 331 N.W.2d 847 (Ct. App. 1983).

exercising this authority, the court serves as a guard against punitive damages awards that are a product of a jury's passions and prejudices. *Trinity Evangelical Lutheran Church v. Tower Ins. Co.*, 2002 WI App 46, ¶ 37, No. 01–1201.

¶ 30.  In determining whether the punitive damages are excessive, the court begins with the premise that the purpose of punitive damages is to punish and deter, not to compensate the plaintiff for any loss. *Reyes*, 220 Wis. 2d at 303. The court must

> consider the reasonableness of the award in light of the case facts. Other factors [that the court] should consider are: the grievousness of the acts, the degree of malicious intent, whether the award bears a reasonable relationship to the award of compensatory damages, the potential damage that might have been caused by the acts, the ratio of the award to civil or criminal penalties that could be imposed for comparable misconduct, and the wealth of the wrongdoer. [The court] also consider[s] the defendant's ability to satisfy a punitive award. Further, one mitigating factor the jury may consider is the severity of any criminal penalty already imposed.

*Id.* (citations omitted). Given that the court is asked to exercise its discretion, it is free to pick and choose what factors it will consider and the weight it will assign to those factors. The trial court's approval of the amount of punitive damages is independent of the jury's award of punitive damages.

¶ 31.  In this case, Kohlmann invoked the trial court's authority to review the punitive damages and either approve them or reduce them to what the court believed would be a fair and reasonable amount. In denying the motion, the trial court explained:

As far as the amount of the punitive damages, which relates to the jury's finding with respect to conversion, they found $12,000 in compensatory damages. I believe that would support the punitive damage judgment alone. While it is a substantial multiple the conversion was testified to—to be one substantial reason, a cause, if you will, that the plaintiff went out of the business he had been in previously because he didn't have the availability of his machine tools. Now there were other reasons, financial losses and problems incurred by the other aspects of the case, but I don't find those disproportionate in light of an understanding while withholding the machine tools in terms of compensatory damage on one level would be the rental value of the machine tools supposedly where a business is put in a situation without their machine tools or readily availability to replace them, and from the testimony it seemed obvious you couldn't just walk into some other shop and say, do you have these 55 machine tools or ten machine tools so I can go right back into business tomorrow, that you would have a business interruption.

The trial court found the punitive damages reasonable because Kohlmann's conversion of Schwigel's machine tools was the primary cause of Schwigel going out of business.

¶ 32.   When the trial court approves or reduces the punitive damages and provides an analysis of the evidence supporting the award, its action will only be set aside where there is an evident abuse of discretion.[3]

---

[3] We defer to the trial court's discretion because it had the opportunity to hear the testimony, view the demeanor and body language of the witnesses. The trial court heard the emphasis, volume alterations and intonations of each witness. As a result, the trial court is in a better position to judge the credibility of each witness and the persuasiveness of each side's presentations.

*Badger Bearing, Inc. v. Drives & Bearings, Inc.*, 111 Wis. 2d 659, 670, 331 N.W.2d 847 (Ct. App. 1983).

> The test to determine abuse is whether, if the trial court had been sitting as the sole finder of fact and had fixed the plaintiff's damages in the disputed amount, this court would still disturb the finding. If there is a reasonable basis for the trial court's determination as to the proper amount, it will be sustained.

*Lutz v. Shelby Mut. Ins. Co.*, 70 Wis. 2d 743, 759, 235 N.W.2d 426 (1975) (footnotes omitted). Under these tests, the trial court's finding that the punitive damages are reasonable solely because of conversion would pass muster. It does not matter if the jury awarded the punitive damages on any of the other claims Schwigel pursued because the trial court found that Kohlmann's conduct in the conversion claim was so egregious and outrageous that it was deserving of punishment.

¶ 33.   I would affirm the trial court's approval of the punitive damages because it is based upon conduct that is separate from that encompassed by the omnibus damages question—breach of contract, negligent misrepresentation, unjust enrichment and promissory estoppel. In finding that the amount of punitive damages was reasonable because of the conversion of Schwigel's tools, the trial court was not engaging in "rank speculation" that the jury would have awarded the same amount of punitive damages if it had found only conversion damages of $12,000. Rather, the trial court was exercising the discretionary authority it has to review the punitive damages award. It was reasonable for the trial court to conclude that Kohlmann's refusal to return the tools to Schwigel, after he demanded their return, was responsible for Schwigel going out of busi-

ness and, independent of any other conduct, was deserving of punishment by the assessment of punitive damages.