PUCCI, Respondent, v. RAUSCH and others, Appellants.

*No. 283.  Argued May 5, 1971.—Decided June 2, 1971.*
(Also reported in 187 N. W. 2d 138.)

514

For the appellants the cause was submitted on the briefs of *Heide, Sheldon, Hartley, Thom & Wilk* and *W. A. Sheldon,* all of Kenosha.

For the respondent there was a brief by *Vaudreuil & Vaudreuil* and *L. E. Vaudreuil,* all of Kenosha, and oral argument by *L. E. Vaudreuil.*

HALLOWS, C. J. The view of the facts apparently taken by the jury and accepted by the court are as follows: The accident occurred early in the morning on January 10, 1968, at about 31st Avenue on Washington Road, an east and west four-lane highway, in Kenosha. Mrs. Pucci, while driving east, attempted to make a left turn into the driveway of the nursing home where she worked and stopped her automobile about one foot over the center line in making her turn. She testified that at that time Rausch was a half a block away coming toward her. Rausch, driving west on Washington Road at about 15 to 20 miles per hour in the northernmost lane of the two lanes for the west traffic, claims he saw Mrs. Pucci when she was 50 to 60 feet away, signalling for a left turn and beginning to make the turn. He reacted by applying his brakes which caused his car to skid to the south across an icy patch and he collided with the Pucci car.

Mrs. Pucci was hospitalized from January 10th to 18th, again for five days in April, and again in June. In the latter month she saw Dr. Peterson, an orthopedist, for her back trouble, who concluded surgery was required. Mrs. Pucci confirmed his diagnosis with a Madison orthopedist and then consented to a laminectomy which was performed by Dr. Peterson on August 5, 1968. This surgery required eleven days of hospitalization. At the trial she

testified she still had trouble with her back. In all, she lost a total of 299 days and her weekly rate of wages was $82.50.

Appellants claim the lower court's decision contains numerous errors of fact. This is a jury case and the facts taken by the court are those which the jury must have found in arriving at its verdict. The appellants' argument really questions the sufficiency of the credible evidence to support the jury's verdict, with special emphasis laid on causation. The appellants claim the sole cause of the accident was the failure of Mrs. Pucci to yield the right-of-way in obedience of sec. 346.18 (2), Stats. This argument would have validity if Mrs. Pucci's car blocked the roadway for Rausch, but the jury was entitled to believe she invaded one of two western lanes by only one foot and there was considerable space left for Rausch to pass in front of her without making a turn. For this invasion over the center of the highway, although not in Rausch's lane of travel, the jury found her 20 percent causally negligent.

The jury did not believe Rausch when he testified Mrs. Pucci started to make her turn only when he was 50 to 60 feet away and therefore caused him to be so apprehensive in his reaction that he put on his brakes which resulted in the skid. Apparently for his failure of lookout and management and control of his car the jury found him 80 percent negligent. We agree with the trial court that a jury question was presented and sufficient credible evidence sustains the verdict.

*Guptill v. Roemer* (1955), 269 Wis. 12, 68 N. W. 2d 579, 69 N. W. 2d 571, is not authority for the proposition that every driver who makes a left turn which precipitates a situation which results in a collision is guilty of negligence in a greater degree than the other driver. In *Grana v. Summerford* (1961), 12 Wis. 2d 517, 521, 107 N. W. 2d 463, this court rejected the contention that

making a left turn across the path of an approaching car would constitute at least 50 percent negligence as a matter of law, choosing instead to decide such cases on their individual facts. If the jury accepted Rausch's version, no doubt Mrs. Pucci would be more negligent than Rausch in making a left turn 50 feet in front of him, but the jury did not accept his version of the accident.

It is claimed the damages are unsupported by the evidence, (1) in respect to causation, and (2) in respect to the amount thereof. If the back injury was caused by the accident or it aggravated a pre-existing back condition, the amount of the damages is not excessive. Mrs. Pucci lost 299 days of work. She was in the hospital three times and she had a laminectomy.

The problem of causation is more difficult because the testimony of Dr. Peterson relating to cause was stricken from the record. At the trial Mrs. Pucci testified that her back injury was caused or aggravated by the automobile accident. Mrs. Pucci's complaint of her back also shows on the hospital report. However, this is a statement of a lay person and is not accepted as sufficient proof without medical corroboration. *See Smee v. Checker Cab Co.* (1957), 1 Wis. 2d 202, 83 N. W. 2d 492; *Meyer v. Fronimades* (1957), 2 Wis. 2d 89, 86 N. W. 2d 25. Rausch claims the condition found by Dr. Peterson in July was unknown on January 10th, the date of the accident, and this remoteness compels the conclusion that the back condition had no relation to the condition for which she was treated in January. There is no rule of thumb of remoteness which automatically determines when a condition is not the effect of a cause. As stated by Prosser, "Remoteness in time or space undoubtedly has its importance in determining whether the defendant has been a substantial factor in causing the harm at all, and may well lead to the conclusion that he has not; or it may give rise to the likelihood that other intervening causes

have taken over the responsibility." Prosser, *Torts* (3d ed.), p. 291, sec. 50. Some injuries show up promptly; others do not manifest themselves for some time. The doctrine of remoteness raising an inference of noncausation is not applicable here were Mrs. Pucci did complain of her back shortly after the accident.

Dr. Peterson testified that in his opinion Mrs. Pucci had a previously existing back condition which was aggravated by the automobile accident. However, this testimony, which would be sufficient to sustain causation, was stricken—the plaintiff claims properly so, the defendants claim it was error. The question now presented is whether Dr. Peterson's opinion was to a medical certainty or probability. There is a dispute in the briefs over terminology, but we see no distinction between "medical certainty" and "medical probability."

On cross-examination of Dr. Peterson, he was asked whether his opinion was not "a little bit speculative." Dr. Peterson countered that "Everything in medicine is speculative; there is nothing that is not speculative." He was ordered to answer yes or no or I don't know, and he answered "I don't know." In the light of this answer the court struck his testimony. It is plain from reading the record that the two attorneys and the court were on a semantic merry-go-round with the doctor and there was a lack of communication between the legal profession and the medical profession over the legal formula in which an acceptable medical opinion should be expressed.

The term "medical certainty" is misleading if certainty is stressed to mean absolute certainty or metaphysical certainty. Medicine is not based upon such certitude but rather upon the empirical knowledge and experience in the area of cause and effect. The term "medical probability" more accurately expresses the standard. The standard requires a conviction of the mind or that degree of positiveness that the doctor has in his opinion, which

is based upon his knowledge of medicine and the case facts, that his belief is correct to a reasonable medical probability. Other doctors may differ, but whether his opinion corresponds with that of another member of the medical profession does not go to admissibility of his opinion but to the weight the trier of the facts should give to his opinion. *See Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 343, 353, 99 N. W. 2d 163.

In the cases we find language which indicates an opinion to a reasonable medical probability, although such standard is not expressly so stated, and we find other language which is unacceptable as importing an opinion founded upon the necessary basis of certitude. This court has often said an expert opinion expressed in terms of possibility or conjecture is insufficient. *Casimere v. Herman* (1965), 28 Wis. 2d 437, 445, 137 N. W. 2d 73; *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 86, 102 N. W. 2d 393; *Michalski v. Wagner* (1960), 9 Wis. 2d 22, 27, 100 N. W. 2d 354. "Might" or "could" is not sufficient and does not reach the certitude required. *Freuen v. Brenner* (1962), 16 Wis. 2d 445, 453, 114 N. W. 2d 782. But *see Olson v. Siordia* (1964), 25 Wis. 2d 274, 130 N. W. 2d 827. The "might or could rule" is another form of possibility like "perhaps." *Shymanski v. Industrial Comm.* (1956), 274 Wis. 307, 79 N. W. 2d 640; *Kowalke v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. 2d 389, 88 N. W. 2d 747. However, an opinion expressed in terms of "I feel" or "I believe" has been held to be sufficient. *Hintz v. Mielke* (1961), 15 Wis. 2d 258, 267, 112 N. W. 2d 720. The words "liable," "likely," and "probable" have also been accepted as words connoting reasonable probability as opposed to a possibility. *Hallum v. Omro* (1904), 122 Wis. 337, 99 N. W. 1051.

In *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 99 N. W. 2d 182, we stated the test was not the use of a word but the meaning or sense in which the word or phrase was used and this required interpretation. The problem to what degree of definiteness or positiveness a

medical opinion must conform in order to be admissible is discussed in *Medical Evidence in Wisconsin,* Arnold, 49 Marquette Law Rev. (1966), 657, 669; *see also:* 6 Am. Jur., Trials, *Basis of Medical Testimony,* p. 109, and Miller, *The Rule of Medical Certainty,* The Defense Research Institute, Inc., monograph Feb., 1967.

We think the trial court acted hastily in striking the doctor's testimony and it was error to do so. The doctor was testifying to a reasonable medical certainty based upon medical probabilities although he used the word "speculative" in a broad sense to negate absolute certitude. It is clear from the record the doctor intended by his word that his opinion was to a reasonable medical probability and that was his conception of medical certainty. Whether the jury disregarded the doctor's testimony, as it was instructed to do, we do not know; but the verdict is supported by Dr. Peterson's erroneously excluded testimony.

*By the Court.*—Judgment affirmed.