Matthew MIKAELIAN, individually and as Special Administrator of the Estate of Seta Mikaelian, Antranig Mikaelian, individually and as Special Administrator of the Estate of Senekerim Ekizian, Sara Mikaelian, Rosa Ekizian, Vache Mikaelian, Aram Mikaelian, a minor, Hrach Mikaelian, a minor, the aforesaid minors by Adrian P. Schoone, their Guardian ad Litem, and Alicia Mikaelian, Plaintiffs-Appellants and Cross-Respondents,

v.

Paul P. WOYAK, James A. Woyak, Alfred P. Woyak, and Nancy A. Woyak, Defendants-Respondents and Cross-Appellants,

Robert BARATKI, and United Pacific Insurance Company, a foreign insurance company, Defendants-Respondents,

AETNA LIFE INSURANCE COMPANY, a foreign insurance company, Equitable Life Assurance Society of the United States, a foreign insurance company, and Metropolitan Life Insurance Company, a foreign insurance company, Defendants.

Court of Appeals

*No. 83–2385. Submitted on briefs September 17, 1984.—
Decided November 21, 1984.*
(Also reported in 360 N.W.2d 706.)

582

For the plaintiffs-appellants and cross-respondents, the cause was submitted on the briefs of *Adrian P. Schoone, Robert E. Hankel* and *Virginia M. Antoine* of *Schoone, McManus, Hankel, Ware & Fortune, S.C.,* of Racine.

For the defendants-respondents, the cause was submitted on the brief of *Lynn R. Laufenberg* of *Frisch, Dudek and Slattery, Ltd.,* of Milwaukee.

For the defendants-respondents and cross-appellants, the cause was submitted on the briefs of *L. William Staudenmaier* and *Bruce A. Olson* of *Cook & Franke, S.C.,* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   In this automobile accident case, the plaintiffs alleged that a passenger in one of the automobiles was actively negligent and should be held at least partially responsible. The jury found the passenger not negligent, and the plaintiffs appeal claiming first, that a co-defendant's statement, withheld from the plaintiffs during trial, would have provided material evidence of the passenger's negligence such that the jury's decision would probably have been different; and second, that all participants in an illegal automobile race, including passengers, should be jointly liable for any resulting injuries, as a matter of public policy. The plaintiffs also claim that a $10,000 damage award to the surviving widow was inadequate. We affirm.

There is also a cross appeal. Although the passenger was found not negligent, two drivers were found negligent; one of them was a minor. His parents raise various constitutional challenges to the vicarious liability statute for sponsors of minor drivers, sec. 343.15(2),

Stats. We reject these arguments as well and affirm on the cross appeal.

We must review the evidence in a light most favorable to the jury verdict. *Roach v. Keane,* 73 Wis. 2d 524, 536, 243 N.W.2d 508, 515 (1976). With that in mind, the facts are: On November 19, 1979, at about 9:00 p.m., Paul Woyak, age seventeen, drove his automobile into a service station; his passenger was Robert Baratki, also seventeen. James Woyak, age eighteen, drove by, and seeing his brother's car, stopped at the service station. After an ensuing conversation, the three prepared to leave. As James Woyak was getting into his car, he was overheard to say, "Do you want to run it?"

A race subsequently occurred. Although the automobiles were traveling on a two-lane road with a speed limit of 55 miles per hour, the autos occupied the whole roadway and reached speeds of ninety miles per hour. Both Woyaks ran a stop sign and collided with a van driven by Alicia Mikaelian. Paul Woyak's auto struck the left rear portion of the van and spun it around. The James Woyak vehicle then struck the front of the van. One adult and one of Alicia's children died. Five other children, as well as Alicia and another adult, sustained severe injuries. The Woyaks were found negligent— Paul fifty-five percent, James forty-five percent. Paul Woyak's passenger, Robert Baratki, was found not negligent. Further facts will appear when necessary.

The first issue is the plaintiffs' claim that a statement withheld from their attorney would probably have changed the jury's assessment of Baratki's negligence. This statement was made by James Woyak to an insurance adjuster. During depositions and at trial, James Woyak testified that he thought he had made such a statement. The plaintiffs' attorney demanded the statement, but James Woyak's attorney asserted on the record that he had searched for the statement and was unable

to find it, if it in fact existed. After trial, the statement was discovered in the file of an attorney for another law firm that at one time represented James Woyak. The plaintiffs moved for a new trial on the grounds of newly discovered evidence and in the interests of justice generally, but the trial court denied the motion.[1]

The plaintiffs recognize that a trial court's ruling on a motion for a new trial on the ground of newly discovered evidence or in the interests of justice generally is highly discretionary and will not be reversed on appeal in the absence of a showing of an abuse of discretion. *Johnson v. American Family Mutual Insurance Co.*, 93 Wis. 2d 633, 649–50, 287 N.W.2d 729, 737 (1980). They claim that the trial court abused its discretion. A new trial based on newly discovered evidence will be authorized when the conditions in sec. 805.15(3), Stats., have been satisfied. These conditions are: (a) the evidence came to the moving party's notice after trial; (b) the moving party's failure to discover the evidence earlier was not from lack of diligence; (c) the evidence is material and not cumulative, and (d) the new evidence would probably change the result. Sec. 805.15(3). The trial court ruled that the newly discovered evidence was cumulative and

---

[1] In motions after verdict, the plaintiffs also asserted fraud on the part of defense counsel. Sec. 806.07(1)(c), Stats. On appeal, however, the plaintiffs explicitly state that it is unnecessary to argue or rely upon this ground. We will not, therefore, address it. In fact, although the plaintiffs asked for a new trial based on newly discovered evidence (sec. 806.07(1)(b) and sec. 805.15(3), Stats.) or, in the alternative, a more general interests of justice version (sec. 806.07(1)(a), (g) and (h), Stats.), the plaintiffs relate no specific ground on appeal. We assume that the plaintiffs have not abandoned any of the remaining grounds and will therefore assume that a new trial is requested either on the basis of newly discovered evidence or in the interests of justice pursuant to other provisions of sec. 806.07, excepting sec. 806.07(1)(c)—fraud or misrepresentation.

probably would not have changed the result. We hold that the trial court did not abuse its discretion.

In reviewing this issue, we must determine what the state of the evidence was at trial and then determine if the new evidence would have made the necessary difference. We review first the theories of both the plaintiffs and the defendant, Robert Baratki. In attempting to place some fault on the passenger Baratki, the plaintiffs alleged that the agreement to race was decided upon at the service station. The plaintiffs reasoned that a person who encourages or aids and abets another in the commission of a tort is liable for injuries. Thus, the plaintiffs tried to prove that Baratki was part of a common plan or design to race, the plan having been agreed upon at the station, that he actively took part in its planning, and by his taking part, encouraged the tortious act. All of the defendants asserted, however, that the race was not a result of any express agreement made at the service station but developed spontaneously when James attempted to pass and his brother would not allow him to do so.

We next review the evidence elicited in support of the theories. The jury had the following evidence before it. Larry Revolinski, one of the service station attendants, overheard James Woyak ask Paul, "Do you want to run it?" This statement was allegedly made at the service station in the presence of Baratki. The jury could, therefore, believe that Baratki at least had knowledge of an intention to race. The jury also knew that Paul Woyak and Baratki conversed after leaving the service station. Baratki admitted knowing that a race was taking place. The jury could also have believed that Baratki aided and abetted Paul Woyak because he was observed looking over his shoulder at James Woyak's vehicle. The jury could have inferred that Baratki was serving as a lookout.

On the other hand, there was also credible evidence to believe that Baratki had nothing whatsoever to do with the race. He denied hearing James Woyak's statement at the service station. Paul Woyak testified that the decision to speed his car up and keep his brother from passing him was his alone. Paul Woyak testified that he never asked Baratki to, nor did Baratki, assume a lookout duty, that Baratki never encouraged Paul Woyak or aided him in any manner, nor did he distract him. The only thing Baratki did, according to Paul Woyak, was to warn him when he saw the van, but the warning was too late. The jury was free to choose from these alternative inferences and chose not to believe the plaintiffs' factual theory.

The plaintiffs claim that the missing statement would have provided further evidence of Baratki's participation in the planning of the race; it would have bolstered their theory that Baratki was more than a spectator. They claim that the missing statement is so probative that it probably would have changed the jury's mind regarding which alternative inference to accept.

The statement, in pertinent part, appears in an accompanying footnote.[2] It is James Woyak's statement

---

[2] The statement reads in part as follows:

Q: Upon meeting your brother at the Standard station was it? What was that conversation then other than what you stated already?

. A: Of why what he was doing there?

Q: You mentioned part of it.

A: I just asked him what he was doing there and I said what you doing he said they went out to Southridge and everything and ah then he said he had to put oil in his car that's all and so then he when after I said what is he doing I just figured on going home and then ah one of us I guess I must have said you want to race or something just jokingly you know and then we just shrugged it off and we both left.

Q: Who left first?

A: It must have been Paul.

describing a conversation at the service station. The plaintiffs point out that this statement specifically establishes, for the first time, an admission by any defendant that a conversation about racing actually occurred at the service station. This is different than the trial testimony because at trial, none of the defendants recalled any mention of a race while at the service station. The plaintiffs then assert from this statement that the jury could infer Baratki's having encouraged a race. This is because the statement contains a reference to the fact that "one of us" may have suggested the race.

The trial court reasoned, however, that the statement did not include Baratki nor indicate any response by him. The statement only serves to corroborate Revolinski's testimony that James asked Paul if he wanted to "run it." The trial court's complete statement is set forth in a footnote.[3]

---

Q: How much time passed between his leaving and your leaving?
A: Ah no time passed. I was right behind him.
Q: Why did you pass him or attempt to?
A: Ah just to pass, you know just to bother him.

[3] The trial court's statement is as follows:

Plaintiff in his brief states that in this case a new trial on all issues must be granted in the interest of justice; the case and controversy was not fully tried due to the absent statement of James Woyak which contains direct evidence of a premeditated and deliberate plan to race by James Woyak, Paul Woyak, and Robert Baratki, evidence that the James Woyak vehicle traveled at a speed of at least 90 miles per hour during the race, and evidence directly impugning the credibility of the defendant actors.

The statement of racing before the cars left the station confirms Revolinski's testimony. The statement does not include Baratki nor indicate any response of Baratki. The statement does not indicate that the race started when leaving the station nor infer that it did. The statement is to the effect that that race started on Highway V which is consistent with the trial testimony.

We agree with the trial court's reasoning that while the statement, on its face, possibly suggests that the conversation included the two brothers *and* Baratki, such that Baratki might have been the one who suggested a race, an examination of the statement's entire context reveals that the declarant's reference was to a conversation he was having with his brother, not with Baratki. Further, the statement indicates that James Woyak himself suggested the race. The trial court's process of reasoning, that the statement did not include Baratki, is therefore based on facts that are of record or reasonably derived by inference from the record. *See Christensen v. Economy Fire & Casualty Co.*, 77 Wis. 2d 50, 55–56, 252 N.W.2d 81, 84 (1977). We conclude that the trial court was correct in deciding that the statement is not independently probative but merely corroborative of testimony already in the record and that the evidence, under optimum circumstances, would not result in a different verdict.

As to their second issue, the plaintiffs assert that all participants in an automobile race on a public highway should share responsibility for any injuries caused, as a matter of public policy. We will not dwell upon this issue at length because the issue begs the question. For one to share responsibility, that person must first be classified as a "participant." Viewing the evidence in a light most favorable to the verdict, as we must, the conclusion is that Baratki did not "participate" in the race.

The statement at best could be used to impeach James Woyak's trial testimony of not recalling saying that "one of us I guess must have said you want to race or something just jokingly you know and then we just shrugged it off and we both left." However, this statement was brought forth by Revolinski and Woyak was cross-examined in regard to it by attorney Schoone.

The Court believes that from the facts the statement is cumulative in nature and would not probably change the result.

The plaintiffs contend, however, that failure to lookout, failure to warn and failure to protest or criticize are tantamount to acquiescence. The plaintiffs then reason that if a passenger acquiesces, he or she is a participant. The plaintiffs conclude that because Baratki was an acquiescing participant, the public policy argument applies here. *Delmore v. American Family Mutual Insurance Co.*, 118 Wis. 2d 510, 348 N.W.2d 151 (1984), commands us to reject the idea. In *Delmore,* the supreme court reaffirmed the basis for passenger liability to third parties under Wisconsin law. The court reiterated the distinction between a guest's "passive" and "active" negligence, emphasizing the requirement of affirmative evidence that the passenger assume some part of the driver's duties of management and control before liability can be imposed. A failure to warn, a failure to protest, or other non-conduct showing "acquiescence" are examples of passive negligence and cannot be considered synonymous with an affirmative act. We hold that acquiescence does not make a passenger a participant in an automobile race on a public highway; thus, the plaintiffs' second argument fails.

The final argument is that the $10,000 jury award to Rosa Ekizian to compensate her for pecuniary loss and loss of society and companionship of her deceased husband was insufficient. Rosa Ekizian asks that this court order a new trial on that issue of damages or increase the damages to a reasonable sum. We will not do either. The form of the verdict question requested by the plaintiffs coupled both pecuniary loss and loss of society and companionship. Rosa's husband was retired and sixty years of age at the time of his death and was handy around the house. Rosa argues that she will have to pay thousands to hire someone to do the tasks her husband

was able to do. Yet, no evidence was offered which would have permitted a jury to place a value on these alleged services. We said in *Badger Bearing, Inc. v. Drives & Bearings, Inc.*, 111 Wis. 2d 659, 670, 331 N.W.2d 847, 854 (Ct. App. 1983), that:

> In reviewing a damages award granted by a jury, this court may not substitute its judgment for that of the jury but, rather, must determine whether the award is within reasonable limits. . . . In our review of the record, we must view the evidence in the light most favorable to the damages award. [Citation omitted.]

Coupled with the limited evidence available on pecuniary loss and the $10,000 ceiling that Wisconsin places on loss of society and companionship in wrongful death cases, the award was within reasonable limits.

We now reach the cross appeal. Alfred and Nancy Woyak were not, of course, involved in the three-car collision. As parents of a seventeen-year-old motor vehicle operator, however, they were joined as defendants pursuant to sec. 343.15(2), Stats., the "sponsorship" statute. Of the $661,608.89 judgment, $150,000 is covered by insurance. This means that the parents have a judgment against them personally of approximately $511,000. They appeal the trial court's refusal to declare that the sponsorship statute is either unconstitutional or inapplicable as to them. The sponsorship statute states:

> Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where both have custody and either parent signed as sponsor, otherwise, it is imputed to the adult sponsor who signed the application for such person's license. The parents or the adult sponsor is jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

Sec. 343.15(2).

The parents first argue that the statute violates due process. They claim that a statute which sanctions the visitation of the sins of children upon their parents without proof of wrongdoing on the part of either parent is fundamentally unfair and brings about a deprivation of property without due process. U.S. Const. amend. XIV, § 1; Wis. Const. art. I, § 1.

They note that a legislative enactment which is arbitrary and unreasonable violates due process. The exercise of legislative power must be reasonable. *See Kahn v. McCormack,* 99 Wis. 2d 382, 385-86, 299 N.W.2d 279, 281 (Ct. App. 1980). There must be a rational connection between the imposition of liability and the conduct or activity upon which the liability is predicated. *Oliver v. Travelers Insurance Co.,* 103 Wis. 2d 644, 647, 309 N.W.2d 383, 385 (Ct. App. 1981). They claim that before a legislature can find liability without fault, the person must engage in an activity which creates or increases, either directly or indirectly, the risk of injury to a portion of the public.[4] They ask whether parents, by merely engaging in the natural activity of raising children, are *ipso facto* exposing a portion of the public to a greater risk of injury.[5] They answer that query by denying that the mere parental act of allowing their child to drive somehow increases the risk to the public. They conclude that there is no rational connection between the imposition of liability and the conduct or activity upon which the liability is predicated.

We disagree. We start with the maxim that a statute will not be declared void unless shown to be unconstitutional beyond a reasonable doubt. *In re E.B.,* 111 Wis. 2d 175, 187, 330 N.W.2d 584, 591 (1983). We presume

---

[4] *See* Note, *Torts: The Constitutional Validity of Parental Liability,* 55 Marq. L. Rev. 584, 589 (1972).

[5] *Id.*

the constitutional validity of a statute. The guarantee of due process requires "only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." *Nebbia v. New York,* 291 U.S. 502, 525 (1934).

We have no trouble deciding that the sponsorship statute has a real and substantial relation to the "object sought to be attained." The right to operate a motor vehicle upon the public highways is not an unrestricted right—it is a privilege. *Steeno v. State,* 85 Wis. 2d 663, 671, 271 N.W.2d 396, 400 (1978). The legislature, under the police power, may regulate and reasonably control motor vehicle licensing. The legislature's reluctance to allow juveniles to drive is understandable. Operation of a motor vehicle is a skill involving mental discretion as well as physical dexterity. We take judicial notice of the Wisconsin motor vehicle statistics in the past years to underline the point that juveniles generally do not possess mental discretion to the same degree as an adult and, consequently, present a greater risk on Wisconsin highways.[6] They also generally lack adequate finances to cover any potential damage they may cause. *See Ynocencio v. Fesko,* 114 Wis. 2d 391, 399, 338 N.W.2d 461, 465 (1983). Thus, we come to the first premise. The legislature presumes it to be the better course of action that juveniles only be allowed to drive if an adult will agree to share the responsibilities of that privilege.

If they are to drive, then someone must be responsible for the increased risk upon the public. The legislature has selected sponsors who are likely to have personal knowledge of the minor's characteristics and have an opportunity to exercise some degree of control over the minor's driving. *Id.* at 398–99, 338 N.W.2d at 464–65. Generally, this responsibility falls on the parents. It is

---

[6] *See also Bispham v. Mahony,* 175 A. 320, 321 (Del. Super. Ct. 1934).

the parents who can limit the amount of driving and the times of day the car is to be driven; it is the parents who can inculcate their children with the need to use correct discretion when driving. In short, if the parents believe their children can shoulder the responsibility of driving sensibly, then they must accept the risk if their decision is wrong.

In other words, the parents voluntarily make a decision to allow their children to drive on the public highways. This is the conduct upon which liability is predicated—the parent's conduct in allowing their children to drive, not the child's conduct behind the wheel.[7] We conclude that there is a rational connection between the imposition of liability and the conduct or activity upon which the liability is predicated. As such, no due process violation exists.

Alfred Woyak raises a sub-issue to the due process concern. He did not sign as sponsor—his wife did. Yet, he is as liable as she. He believes his half of the equity in their home should remain immune from the judgment. Again, we do not agree. Imposition of liability on both custodial parents merely recognizes the state policy encouraging the family unit. See Theama v. City of Kenosha, 117 Wis. 2d 508, 517–18, 344 N.W.2d 513, 517–18 (1984). Both parents have equal opportunity to exercise control over the minor's driving because they both have custody; they should, therefore, take joint responsibility for the decision. See In re Estate of Stromsted, 99 Wis. 2d 136, 143–44, 299 N.W.2d 226, 230 (1980).

---

[7] The parents claim that this reasoning upsets Wisconsin's legislative policy of promoting the family unit. We disagree. The decision to allow a minor to drive fosters a closer relationship between parent and child—one based upon mutual trust and responsibility. It is a family decision. Making the parents not responsible would mean that the minor might pay less allegiance to potential concerns regarding driver safety and responsibility.

Alfred Woyak raises another sub-issue—that the statute violates the equal protection clause. While parents who do *not* have custody cannot be held liable under the statute, non-signing parents such as Alfred Woyak are held liable simply because they share custody of the child with their spouse. Alfred Woyak submits that he is placed in a class which is not substantially distinct from that of the non-signing, non-custodial parent.

We see little merit to this contention. In deciding this issue, we have scrutinized the criteria inherent in every equal protection analysis. Those criteria are listed in a footnote.[8] We are satisfied that the fact of custody provides the substantial difference in the two classes. As we have discussed, the custodial parent has the opportunity to allow or disallow the juvenile to drive; the non-custodial parent does not have this option. With this choice comes the responsibility to instill respect for proper driver discretion—to set hours and times for driving, to set limits on distance of travel and the like. Those who feel that they cannot trust their children to drive responsibly can refuse to sponsor the license; those who believe that their children are not driving responsi-

---

[8] The courts of this state have long held that any legislative classification must satisfy five criteria:

(1) The classification must be based on *substantial* distinctions, which make one class really different from another;

(2) The classification adopted must be *germane* to the purpose of the law;

(3) The classification must not be based on the existing circumstances only, and must not be so constituted as to preclude additions to the numbers included within a class;

(4) The law must apply equally to each member of the class; and

(5) The *characteristics* of each class should be so far different from those of other classes as to reasonably suggest the propriety of substantially different legislation.

*See, e.g., Harris v. Kelley,* 70 Wis. 2d 242, 252, 234 N.W.2d 628, 632 (1975).

bly can revoke their sponsorship. Custody is an all-important ingredient. The fact that a custodial parent is the non-signing one does not mean that no control exists. Signing or non-signing, the custodial parent has a say in responsibility. The same cannot be said of the non-custodial parent.

Next, both parents argue that the statute is vague. "A statute is void for vagueness when men of common intelligence must guess at its meaning and differ as to its applicability." *State v. Hill,* 91 Wis. 2d 446, 453, 283 N.W.2d 451, 454 (Ct. App. 1979).

The statute imputes both negligence and "wilful misconduct" to the parents. It holds parents liable for *any* damages caused by such negligent or willful misconduct. The parents claim this is vague because it is unknown whether the parents are liable for punitive damages as well as compensatory damages and because it is unknown whether punitive damages are an insurable risk.

A statute will not be invalidated for vagueness unless there appears some ambiguity in the gross outlines of the prescribed conduct; it is insufficient to show merely that the boundaries of the area of the prohibited conduct are somewhat hazy. *State v. Courtney,* 74 Wis. 2d 705, 711, 247 N.W.2d 714, 718–19 (1976). A fair degree of definiteness is all that is required. *State v. Ehlenfeldt,* 94 Wis. 2d 347, 355, 288 N.W.2d 786, 789–90 (1980). Language in a statute may be considered to have a sufficiently definite meaning because of its common usage or understanding. *Id.* at 356, 288 N.W.2d at 790.

The terms "wilful misconduct" and "any damages" are not vague; they have common, unambiguous meanings. Willful misconduct includes punitive damages. *Wangen v. Ford Motor Co.,* 97 Wis. 2d 260, 275, 294 N.W.2d 437, 446 (1980). As to the insurability argu-

ment, that has nothing to do with the clarity of the statute; rather, it is simply a question existing between insurer and insured. That question is: Given the sponsorship statute, how much will the insured be willing to pay in order to avoid exposure and will the insurer want to take the risk in exchange? The statute is not vague— the questions regarding risk are a matter of contract between insurer and insured.

Finally, the parents contend that if the statute is found constitutional, the amount of exposure should be limited to the $15,000/$30,000 limits of the Financial Responsibility Law, sec. 344.15(1), Stats. (1979). This is without merit. The sponsorship law imposes no limit of liability. The rule urged by the parents, that statutes are to be reconciled or harmonized with each other, applies only to statutes relating to the same subject matter. *State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980). The purpose of the financial responsibility law requires drivers to have a minimum amount of insurance. The purpose of the sponsorship statute is to force parental responsibility for their conduct in allowing their children to drive by imputing liability. The two statutes are not related.

*By the Court.*—Judgment and order affirmed.