Leon M. REYES, Plaintiff-Respondent,†

v.

GREATWAY INSURANCE COMPANY, a domestic insurance corporation, Defendant-Appellant,

Aaron S. ROTHERING, Defendant-Co-Appellant,

Cheryl L. ROTHERING, State Farm Fire & Casualty Company, a foreign insurance corporation, Farm Mutual Automobile Insurance Company, a foreign insurance corporation, and Wisconsin Department of Health and Social Services, Defendants.

Court of Appeals

*No. 97–1587. Submitted on briefs April 10, 1998.—Decided May 27, 1998.*

(Also reported in 582 N.W.2d 480.)

†Petition to review granted.

On behalf of the defendant-appellant *Greatway Insurance Company*, the cause was submitted on the briefs of *Arthur P. Simpson* of *Simpson & Deardorff* of Milwaukee.

On behalf of the defendant-co-appellant *Aaron S. Rothering*, the cause was submitted on the briefs of *Rodney W. Carter* of *Hinshaw & Culbertson* of Milwaukee.

On behalf of the plaintiff-respondent *Leon M. Reyes*, the cause was submitted on the brief of *Timothy S. Knurr* of *Schoone, Fortune, Leuck, Kelley & Pitts, S.C..* of Racine.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J. Our legislature has decided that a minor is eligible to obtain a motor vehicle operator's license only if the minor is sponsored by a parent or guardian. The sponsor is then liable for "[a]ny negli-

gence or willful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways." Section 343.15(2)(b), STATS. We construe this statute to apply in all situations involving the "skill" of driving an automobile and the "mental discretion" in exercising that skill. Because engaging in a drive-by shooting does not involve the "skill" of driving, the sponsor is not responsible under the statute for injuries to the victim of a drive-by shooting. We reverse the trial court's ruling to the contrary. We also reverse that portion of the damages concerning future medical expenses and order that the award be reduced to a figure we have determined conforms to the proof. In all other respects, we affirm the verdict.

On the night of October 6, 1993, Aaron S. Rothering was driving in his car with a companion, Marlon Jamison, when they passed by several people standing on a sidewalk. Although they apparently did not recognize any one individual in the group, they identified them as members of a rival gang. Aaron then drove a couple of blocks away, stopped the car and both young men armed themselves with shotguns stored in the trunk of the car. Aaron then drove back to where the group of people was standing. As Aaron approached the group, he turned off the car's headlights and both fired into the group as they drove by. Aaron fired twice, and some of the pellets Aaron fired struck Reyes in his left eye, neck, side, hand and ribs. As a result, Reyes permanently lost his vision in his left eye. Aaron was seventeen years old at the time of the shooting.

As a result of this incident, Aaron later pled guilty to first-degree reckless injury, party to a crime, along

with six other felony charges. He was sentenced to twenty-seven years in prison.[1]

Reyes then brought a civil action against Aaron and Greatway Insurance Company (Greatway), which insured Aaron's automobile.[2] Aaron was the owner of the car and it was insured in his name with Greatway. Under this policy, Greatway agreed to pay damages up to the policy limit "for which an insured person is legally liable . . . ." However, the policy also stated that it did not provide coverage for an insured who intentionally caused the damage. As a result, although Aaron was clearly an insured person and legally liable for the damage, Greatway claimed it was not liable under the policy for Aaron's intentional act.

Reyes, however, claimed that Aaron's mother, Cheryl, was also an insured person under the Greatway policy. He further claimed that because she signed the application for Aaron's driver's license, she was legally liable under the sponsorship statute, § 343.15(2)(b), STATS., for the damages caused by Aaron's act. In its response to Reyes' motion for summary judgment, Greatway argued that § 343.15(2)(b) did not impose liability upon Cheryl for Aaron's criminal act. The trial judge presiding at the time, the Honorable Dennis J. Flynn, disagreed and held that the sponsorship statute imputed liability for Aaron's conduct to Cheryl.[3]

---

[1] Marlon Jamison also received a lengthy prison sentence for his part in the shooting.

[2] Reyes entered into a pretrial settlement with State Farm Fire & Casualty Company, Farm Mutual Automobile Insurance Company and Cheryl L. Rothering. These parties were then dismissed from the action.

[3] Specifically, Judge Flynn denied Reyes' motion for summary judgment, finding that an issue of fact remained as to

A jury trial followed, which was presided over by the Honorable Stephen A. Simanek. The jury found Aaron to have committed an intentional tort and returned a verdict for Reyes, awarding him approximately $350,000 in damages, of which $50,000 represented an award for future medical expenses. From this amount, Greatway was to pay $25,000 plus costs for Cheryl's liability in the shooting. Also, the jury awarded Reyes $100,000 in punitive damages.

Both Aaron and Greatway filed motions after verdict. Aaron asked the court to reduce the award of future medical expenses and to strike the punitive damages award as excessive. Greatway asked the court to reverse Judge Flynn's earlier ruling that Cheryl was liable under the sponsorship statute. Judge Simanek denied all of the motions and this appeal followed.

We address Greatway's appeal first. We assume, arguendo, that Cheryl is "an insured person" under Aaron's automobile insurance policy with Greatway. The issue before us then is whether Cheryl is liable under § 343.15(2)(b), STATS., for the damages Aaron caused in the drive-by shooting. The interpretation of a statute is a question of law which we review without deference to the decision of the trial court. *See Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983).

Section 343.15(2)(b), STATS., provides in relevant part:

---

whether Cheryl had canceled her sponsorship prior to the shooting. Implicit in the trial court's finding is the assumption that the sponsorship statute imposed liability on Cheryl for Aaron's conduct.

Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways is imputed to the parents where . . . either parent signed as sponsor . . . . The parents . . . [are] jointly and severally liable with such operator for any damages caused by such negligent or wilful misconduct.

Reyes' argument is that because Aaron "was operating the motor vehicle . . . at the very same time he was shooting [the shotgun] out the window," Cheryl is liable under the statute for the damages caused by his conduct. But we are convinced that the *ratio decidendi* of two cases interpreting the statute leads to a different result. Those two cases are *Mikaelian v. Woyak,* 121 Wis. 2d 581, 360 N.W.2d 706 (Ct. App. 1984), and *Employers Mutual Fire Insurance Co. v. Haucke,* 267 Wis. 72, 64 N.W.2d 426 (1954).

In *Mikaelian,* we discussed the legislature's rationale for passing § 343.15(2)(b), STATS. There, the issue was whether the parents were liable for damages caused by their seventeen-year-old son who had hit another vehicle during an illegal automobile race on the highway. *See Mikaelian,* 121 Wis. 2d at 592, 360 N.W.2d 712. In finding the parents liable for their child's reckless driving, we made the following observations about the scope and object of the statute.

First, we noted that driving was a skill which required mental discretion and physical dexterity. *See id.* at 594, 360 N.W.2d at 713. Because juveniles generally do not possess mental discretion to the same degree as an adult and because they also generally lack adequate finances to cover any potential damages they may cause, the legislature determined that juvenile drivers posed an increased risk to public safety. *See id.* As a result, the legislature concluded that in order to

protect the public, the best course of action was to allow juveniles to drive only if an adult sponsor agreed to accept responsibility for the increased risk upon the public. *See id.*

That responsibility generally falls upon parents. It is the parents who can limit the amount of driving and the times of day the car is to be driven, and it is the parents who can inculcate their children with the need to use correct discretion when driving. *See id.* at 594–95, 360 N.W.2d at 713. In other words, parents are likely to have the requisite personal knowledge of the minor's characteristics and have an opportunity to exercise some degree of control over the minor's driving to make an informed decision on whether to allow their children to drive on the public highways. *See id.* at 594, 360 N.W.2d at 713. Thus, under the sponsorship statute, if parents believe their children can shoulder the responsibility of driving sensibly, then they must assume the risk of their decision being wrong. *See id.* at 595, 360 N.W.2d at 713. This is the conduct upon which parental liability is predicated—the parents' voluntary conduct in allowing their children to drive. *See id.*

In *Employers*, our supreme court addressed the issue of whether the sponsorship statute[4] imputed liability to a parent for the damage caused when the child stole a vehicle and then drove it into a ditch while

---

[4] In *Employers Mutual Fire Insurance Co. v. Haucke*, 267 Wis. 72, 64 N.W.2d 426 (1954), the court interpreted an earlier version of the sponsorship statute, § 85.08(9)(c), STATS., 1951. This does not impact our analysis, however. Section 85.08(9)(c) read in pertinent part:

Any negligence or wilful misconduct of a person under the age of 18 years when operating a motor vehicle upon the highways shall be imputed to the person who signed the application of such person for a permit or license . . . .

trying to evade capture. *See Employers*, 267 Wis. at 72–73, 64 N.W.2d at 426–27. The father claimed that he was absolved from liability because the negligence or wilful misconduct occurred while the juvenile attempted to escape capture during the commission of a crime. *See id.* at 74, 64 N.W.2d at 427. The court concluded otherwise.

The court noted that under the sponsorship statute, liability does not depend on either consent of the owner or knowledge of the parents with respect to the operation of an automobile by a minor. *See id.* at 75, 64 N.W.2d at 427–28. Thus, it was of no consequence that the father did not know his son was driving on that particular occasion or that the owner did not give his consent. *See id.*

More importantly, the court noted that the father's liability was not premised on the son's criminal act of stealing the car. The father's liability was based not on the theft but on the child's negligent operation of the car. *See id.* at 74, 64 N.W.2d at 427. Therefore, because the damage resulted from the son's negligent driving, the father was liable for the damages under the sponsorship statute. *See id.* at 75, 64 N.W.2d at 427. This result, the court observed, tracked the legislative intent of the sponsorship statute, which was directed at "protect[ing] the public from damage caused by the negligent operation of vehicles by youthful drivers" by making "the sponsor liable for *any negligence* in the operation of an automobile by a minor." *Id.* at 75–76, 64 N.W.2d at 428.

In the present case, unlike the juveniles in *Employers* and *Mikaelian*, Aaron's operation of the

---

Thus, there is no substantive difference between the relevant language of § 85.08(9)(c) and § 343.15(2)(b), STATS., as it applies to this case.

motor vehicle on the highway did not cause any damage. We are not confronted with a case in which Aaron's negligent or reckless driving injured others. Nor are we faced with a circumstance where a minor intentionally or willfully used a car as a weapon to injure another person or another person's property. Instead, Aaron's liability is predicated on his distinct act of intentionally discharging a shotgun into a group of people, thereby injuring Reyes.

This factual distinction between the case at bar and *Employers* and *Mikaelian* is important because it defines the scope of parental (or a sponsor's) liability under the sponsorship statute. *Employers* and *Mikaelian* teach that the language in § 343.15(2)(b), STATS., imputing liability to a parent for a child's "wilful misconduct . . . when operating a motor vehicle upon the highways," means parents (or sponsors) are liable for the child's negligent or reckless driving on the highway and also any willful use of the motor vehicle as a weapon to harm another. *See Employers,* 267 Wis. at 75–76, 64 N.W.2d at 428. Stated otherwise, under the sponsorship statute, if parents allow their children to drive, the risk they assume is that the child's *driving* will cause damage, and, as a consequence, they are liable for the child's negligent or intentionally reckless driving. *See Mikaelian,* 121 Wis. 2d at 595, 360 N.W.2d at 713. Therefore, in those two cases, the children's conduct fell within the scope of parental liability under the statute because it was their negligent or reckless operation of an automobile that caused the damage. This result made sense because it carried out the policy of the statute to protect the public from the risks associated with juvenile drivers.

However, nothing in *Employers* or *Mikaelian* suggests that the scope of parental liability under the sponsorship statute extends to a child's conduct distinct from operating a motor vehicle, even though such conduct might occur while the minor is operating an automobile. In fact, in *Employers*, the court specifically stated that the sponsorship statute did not impute liability to the father for the son's criminal act of stealing the car. *See Employers*, 267 Wis. at 75, 64 N.W.2d at 427. The father's liability was premised *solely* on his son's negligent driving. *See id.* As a result, had the child not driven the car into a ditch, thereby triggering the sponsorship statute through his negligent driving, the father would not have been liable for any damage caused by the child's willful misconduct (stealing the car) even though it clearly occurred while he was operating a motor vehicle. This aspect of *Employers* only reinforces our conclusion that parental liability under § 343.15(2)(b), STATS., is confined to damage caused by the child's negligent or intentionally reckless operation of an automobile.

As we previously noted, the important factual distinction between *Employers* and *Mikaelian* and the case at bar is that Aaron's liability is not premised on the operation of an automobile but on his distinct act of shooting a shotgun into a group of people. Therefore, this is a case in which the juvenile's conduct, even though it occurred while he was driving the car, falls outside the ambit of the sponsorship statute and liability for his conduct is not imputed to Cheryl. We reverse the trial court's holding.[5]

---

[5] Greatway also raises several arguments to support its claim that even if Cheryl is legally liable under § 343.15(2)(b),

We now turn to Aaron's co-appeal. First, Aaron challenges the award of $50,000 for future medical expenses. He argues that the record only supports an award of $10,180, which represents the cost of yearly eye exams for the remainder of Reyes' life.[6] Aaron claims that the remaining $39,820, which represents the cost of a medical procedure to remove the injured eye should it shrink, is unsupported by the record and excessive. He raises two arguments to support his claim.

First, Aaron contends that Reyes' medical expert, Dr. Han, did not testify to the requisite degree of medical probability that Reyes' eye would shrink and therefore require future medical attention. To establish a claim for future damages, Reyes must show that there is a medical probability that his eye injury will require future medical attention. *See Pucci v. Rausch*, 51 Wis. 2d 513, 518, 187 N.W.2d 138, 141 (1971). Han testified at length to the severity of the injury to Reyes' eye and to his unsuccessful attempts to restore Reyes' vision in the injured eye. He stated that the injured eye was currently filled with silicone oil, and one long-term

STATS., she is not "an insured person" under the insurance contract and it is not otherwise liable for any damages. Because we hold that Cheryl is not liable under the sponsorship statute, these arguments are moot; therefore, we decline to address them.

[6] Dr. Han testified that because of the injury Reyes would need an eye exam every one or two years, at a cost of $100 to $200 per visit. The parties stipulated that Reyes had a life expectancy of 50.9 more years, a number they apparently derived from an actuarial table. Therefore, the maximum amount the jury could have awarded to represent the cost of future eye exams was $10,180, or Reyes' life expectancy multiplied by $200.

risk associated with this type of injury was that the eye would shrink, becoming both unsightly and painful. Importantly, he opined that in Reyes' case, the severity of the injury meant there was a "significant chance" the eye would shrink and have to be removed.

Aaron contends that a "significant chance" does not establish the requisite degree of medical probability to support an award of future medical expenses. But medical probability does not mean absolute certainty or metaphysical certainty. *See id.* Reyes does not have to show that he will in fact need medical attention in the future. Moreover, the test is not whether the expert used the words "medical probability." *See id.* at 519, 187 N.W.2d at 142. Medical probability simply reflects a legal standard, and we look to the substance of the testimony to determine whether that standard is met.

Here, the doctor's opinion was based on his expert medical knowledge and his familiarity with the injury to Reyes' eye. Moreover, the doctor's use of the term "significant chance" indicates an opinion to a reasonable degree of medical probability that Reyes' injury will require medical attention at some future date. The plain meaning of "significant chance" implies that because of the nature and severity of the injury, the risk is greater than usual that Reyes' eye will become shrunken and require medical attention in the future. We conclude that Hans' testimony established the required degree of definiteness needed to properly place the issue of future medical expenses before the jury.

Next, Aaron claims that even if the issue of future medical expenses to remove the injured eye was properly before the jury, Reyes' failure to provide any

evidence as to the cost of this medical procedure precludes an award of damages. We agree.

The amount of damages to award is a matter resting largely within the jury's discretion. *See Steinberg v. Jensen*, 186 Wis. 2d 237, 267, 519 N.W.2d 753, 765 (Ct. App. 1994), *rev'd on other grounds,* 194 Wis. 2d 439, 534 N.W.2d 361 (1995). But the jury's discretion to award damages is not without limits. Credible evidence in the record must support the amount of damages awarded or it will be deemed excessive. *See id.* Reyes acknowledges that there is no direct evidence in the record supporting an award of $39,820 for the cost of removing the eye if it becomes shrunken. Nonetheless, he argues that the award was not speculative. He contends that the cost of this type of medical procedure is generally known to the public, though he does not explain how that is so. Also, Reyes claims that the jury could accurately calculate any future medical costs based on the testimony it heard regarding the medical costs Reyes incurred trying to save the eye. Again, Reyes does not inform us how the jury could "calculate" in this instance.

We are not persuaded by Reyes' response. An award of future medical expenses will not be upheld if it is unsupported in the record by expert medical testimony. *See Sawdey v. Schwenk*, 2 Wis. 2d 532, 537, 87 N.W.2d 500, 503 (1958). Reyes' concession that no evidence in the record directly supports an award of $39,820 defeats any argument that the award was not speculative. With no evidence in the record to support the award, we can only conclude that the jury created the figure. We therefore reduce the award of future

medical expenses to $10,180, the amount supported by the credible evidence in the record.

Next, Aaron claims that the award of $100,000 in punitive damages was excessive and violates his constitutional due process rights. He concedes that no law in Wisconsin prohibits (or mandates) the imposition of punitive damages even though the same conduct has already resulted in criminal punishment.[7] He theorizes, however, that his present incarceration represents adequate punishment and deterrence, and as a result "[his] prison sentence should be a mitigating factor in the determination of punitive damages in this case." That is, his "double punishment" under both criminal and tort law is so excessive as to be "unfair" and no longer serves the goals of punishing him and deterring others from similar conduct. Also, he argues that the award is excessive because he is currently incarcerated, has no wealth, and therefore he has no ability to pay.

It is within the jury's discretion to determine the proper amount of punitive damages to award a plaintiff.[8] *See Management Computer Servs., Inc. v.*

---

[7] Aaron does not raise an argument that his "double punishment" under both criminal and tort law violated double jeopardy principles. We do not address it.

[8] Punitive damages are permitted only for those torts "which are malicious, outrageous or a wanton disregard of personal rights which require the added sanction of a punitive damage to deter others from committing acts against human dignity." *Fahrenberg v. Tengel*, 96 Wis. 2d 211, 222, 291 N.W.2d 516, 521 (1980) (quoted source omitted). Although the punitive damages statute, § 895.85, STATS., somewhat modified this standard, it is inapplicable to the present case because the present action was commenced prior to May 17, 1995, the effective

*Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 192, 557 N.W.2d 67, 81 (1996). "An award is excessive and therefore violates due process if it is more than necessary to serve the purposes of punitive damages, or inflicts a penalty or burden on the defendant that is disproportionate to the wrongdoing." *Id.* at 193, 557 N.W.2d at 81. We review the calculation of an award of punitive damages to determine whether the jury exercised its discretion within reasonable constraints. *See Heideman v. American Family Ins. Group,* 163 Wis. 2d 847, 870, 473 N.W.2d 14, 23 (Ct. App. 1991).

The purposes of punitive damages are to punish and deter, not to compensate the plaintiff for any loss. *See Management Computer,* 206 Wis. 2d at 193, 557 N.W.2d at 82. When determining whether an award of punitive damages is excessive, we must consider the reasonableness of the award in light of the case facts. *See id.* at 194, 557 N.W.2d at 82. Other factors we should consider are: the grievousness of the acts, the degree of malicious intent, whether the award bears a reasonable relationship to the award of compensatory damages, the potential damage that might have been caused by the acts, the ratio of the award to civil or criminal penalties that could be imposed for comparable misconduct, and the wealth of the wrongdoer. *See id.* We also consider the defendant's ability to satisfy a punitive award. *See* Wis J I—Civil 1707. Further, one mitigating factor the jury may consider is the severity of any criminal penalty already imposed. *See Shopko*

date of the statute. *See* 1995 Wis. Act 17, § 4. Moreover, Aaron does not argue that his actions were not malicious or outrageous and did not warrant the imposition of punitive damages, only that the amount awarded is excessive given the circumstances of the case.

*Stores, Inc. v. Kujak*, 147 Wis. 2d 589, 602, 433 N.W.2d 618, 624 (Ct. App. 1988).

We are not convinced that Aaron's punishment under the tort law is so excessive as to violate due process. In the criminal justice system, a district attorney represents the broader public interest in the effective administration of criminal justice. *See State v. Barlow,* 618 A.2d 579, 581 (Conn. App. Ct. 1993). His or her duty is primarily in seeing that proper punishment is meted out in the event that the criminal law has been violated. *See id.* But the criminal justice system cannot always adequately fulfill its role as the enforcer of society's values because it "must be uniform as to persons and acts, must fix a maximum and minimum punishment on this basis, and cannot always be adjusted to particular circumstances of atrocity which occasionally occur." *Kink v. Combs,* 28 Wis. 2d 65, 81, 135 N.W.2d 789, 798 (1965) (quoted source omitted). In such circumstances, the jury in the civil action acts as the voice of the community and punitive damages may be imposed to further the state's (and therefore the community's) legitimate interest in punishing criminal conduct and deterring its repetition. *See BMW of N. Am., Inc. v. Gore,* 517 U.S. 559, 568 (1996) (the jury may impose punitive damages to further the state's legitimate interest in punishing unlawful conduct and deterring its repetition). This added sanction is commonly referred to as "smart money" because the jury determines that the defendant's conduct was so outrageous as to require additional pecuniary sanctions to punish and deter the defendant and others from similar conduct.

In the case at bar, the jury was told that pursuant to a plea bargain Aaron pled guilty to first-degree reck-

less injury, party to a crime, along with six other felony charges. It was also told that his mandatory release date was in 2011, that he would be thirty-three years old when released and that he would be eligible for parole in the year 2000. Obviously, the jury concluded that given the violent and destructive nature of Aaron's conduct, the sanctions imposed by the criminal justice system were inadequate to punish and deter. Given the facts of this case, we cannot say the jury's conclusion was unreasonable or arbitrary. Aaron's conduct was both violent and reprehensible. It was also unprovoked—his sole rationale for the drive-by shooting was his belief that the group of people on the sidewalk was affiliated with a rival gang. Also, his act of intentionally firing a shotgun at close range into a group of people can only be construed as conduct intended to inflict great bodily harm or death, thereby reflecting a high degree of malicious intent not captured in Aaron's plea bargain and conviction of reckless endangerment. Furthermore, his conduct severely injured Reyes—he is forever blind in his left eye—and inflicted over $300,000 in damages. And although he permanently injured Reyes, his conduct could readily have resulted in greater injury, to both Reyes or others in the group, or even death. Moreover, Aaron's violent conduct inflicted great cost not only upon Reyes but on society as a whole. And the fact that the amount of punitive damages awarded is only a fraction of the total cost of Aaron's conduct to Reyes and the community as a whole further persuades us that the added sanction is reasonable; it does not inflict a punishment disproportionate to the wrongdoing. *Cf. Management Computer*, 206 Wis. 2d at 196, 557 N.W.2d at 83 (punitive damages award that violated due process was considerably greater than the compensatory damages).

■

Finally, we observe that the trial court properly instructed the jury on the relevant factors to consider when it determined the proper amount of damages.[9] These instructions also informed the jury that its discretion in determining punitive damages was not unlimited but confined to the amount it deemed necessary to carry out the policy goals of deterrence and punishment. The jury instructions, therefore, "reasonably accommodated [Aaron's] interest in rational decisionmaking and [the State's] interest in meaningful individualized assessments of appropriate deterrence and retribution." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 20 (1991). We accordingly reject Aaron's argument that because he is already serving a prison sentence, the punitive damages award is unreasonable.

■

Also, we reject Aaron's argument that his lack of wealth and present inability to pay should be mitigating factors in this case. Although Aaron is incarcerated and currently does not have any assets to satisfy the punitive damages award, this does not necessarily mean he forever lacks an ability to satisfy the judgment. Eventually, Aaron will be released from prison.

---

[9] Consistent with WIS J I—CIVIL 1707, the trial court instructed the jury that:

Factors you should consider in answering this question include: 1. The grievousness of the defendant's acts, 2. The degree of malicious intention of the defendant or the recklessness of the defendant's conduct, 3. The potential damage which might have been done by such acts as well as the actual damage, and 4. The defendant's ability to pay. You may consider the defendant's wealth in determining what sum of punitive damages will be enough to punish the defendant and . . . deter the defendant and others from same conduct in the future.

When he is, he will be encouraged to become a productive member of society. He will be encouraged to find employment and earn an income; he will begin to accumulate capital. It is not unreasonable for the jury to want Aaron to share his capital with Reyes.

In conclusion, we reverse the trial court's ruling that Cheryl is liable under the sponsorship statute for injuries caused by Aaron. We also reverse the award of future medical expenses and order that the award be reduced to reflect the figure we have concluded is supported by the evidence in the record. The award of punitive damages is affirmed, and we remand the case with instructions that the trial court modify the judgment to reflect this opinion.

Costs are awarded to Greatway; costs are denied to Aaron and Reyes.

*By the Court.*—Judgment reversed in part; affirmed in part and cause remanded with directions.